**John H. BRADLEY, Appellant,**

v.

**COMPUTER SCIENCES CORPORATION, et al., Appellees.**

**No. 78–1893.**

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1980.

Decided March 13, 1981.

---

Urban A. Lester, Washington, D. C. (Richard N. Bagenstos, Alvord & Alvord, Washington, D. C., on brief), for appellant.

George P. Williams, U. S. Atty., Alexandria, Va., Paul F. Sheridan, Arlington, Va. (Siciliano, Ellis, Sheridan & Dyer, Arlington, Va., on brief), for appellees.

Before HARRY PHILLIPS, Senior Circuit Judge,[*] and RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This case arises from the removal of plaintiff-appellant, John Bradley, from his civil service position. Bradley was an electronics engineer in the Defense Communications Agency (DCA). Bradley's complaint alleges several wrongs by the defendants (his former superiors, a government contractor, and its employees), and he appeals from an adverse judgment below. We affirm.

Bradley was assigned to prepare a report for the Joint Chiefs of Staff on security procedures for an intercomputer communications network. Since the defendant Computer Sciences Corporation (CSC) had a contract with the Defense Communications Agency dealing with the same subject matter and the necessary expertise, it agreed to provide assistance required to prepare the report. Defendants Kepler and Hollander are employees of CSC. After some delay, CSC provided informal technical notes in handwritten form which Bradley put in typed form with no change in content, noted authorship by CSC, and submitted to the Joint Chiefs. The Joint Chiefs found the report generally unsatisfactory.

CSC wrote a letter, dated 3 March 1976, to Bradley's superiors in the DCA. The letter complained that Bradley "misrepresented" the intent of the notes produced by CSC. Several months later, Bradley received an Official Reprimand based, in part, on the charges in the CSC letter. The reprimand was signed by Bradley's supervisor, defendant Bialick. Defendant Champaign is the Chief of the appropriate division of the DCA, and several years earlier had written memoranda critical of Bradley.

In May 1977, Bradley was given a Warning Notice of Unsatisfactory Performance (May 4th), a Notice of Denial of Within-Grade Salary Increase, and a Notice of Proposed Removal from his position. In June 1977, he received a memorandum of the agency's decision to remove him from his position, and he instituted an appeal to the Civil Service Commission on July 15, 1977 of his removal on July 1st.

Bradley filed his complaint in the district court in March 1978. According to the plaintiff, the issues before that court were: (1) harassment, defamation, and intentional infliction of emotional distress on the part of defendants Bialick and Champaign, resulting in, among other things, the removal of plaintiff from a testing program in which he had participated, culminating in the letter of May 4, 1977 which was a warning notice of unsatisfactory performance; (2) libel in the form of the letter of March 3, 1976 on the part of CSC and its employees Hollander and Kepler in which they complained to Bradley's superiors about his performance of duty; (3) libel against Bialick and Champaign, Bradley's superiors, in the form of the official reprimand dated July 13, 1976, which includes republication of the letter of March 3, 1976 from CSC to Bradley's superiors; (4) a conspiracy among all the defendants to injure the appellant.[1]

At the close of plaintiff's case, the district court granted motions for a directed verdict on behalf of all defendants.

---

[*] U. S. Court of Appeals for the Sixth Circuit, sitting by designation.

1. The above issues are taken from page 24 of appellant's brief and are either copied therefrom, or paraphrased, or only elaborated on for the purpose of clarity. The district court, see pages 1 and 2 of its opinion dated October 18, 1978, recited a greater number of issues but included those listed in appellant's brief as the matters he considered the issues before that court. By the time the trial concluded, the issues boiled down, in general terms, to those listed in appellant's brief.

It ruled that the March 3, 1976 letter from CSC was qualifiedly privileged, which privilege was not abused; that the evidence was insufficient to support the other charges; and that, in all events, the government defendants were immune.[2]

As noted, the district court applied the *Barr v. Mateo* doctrine of immunity to the libel cause of action based on the Letter of Reprimand prior to trial and as to the balance of the case against the government defendants at the close of plaintiff's case. In directing verdicts for Champaign and Bialick, the court ruled:

> Even were the governmental defendants not otherwise immune, as I feel they are, this (sic) just isn't any evidence of the type of conspiracy that 1985, subsection 1 talks about.

But the government defendants are entitled to a directed verdict for a more basic reason, aside from the insufficiency of the evidence. They are immune. Barr v. Mateo is very much alive and Butts v. Economou makes that quite clear.

There is no allegation here of a violation of a constitutional right. There is no evidence of any exceeding by the governmental defendants of their statutory authority.

This is no more than a common law tort of conspiracy or of intentional infliction of emotional distress.

Consequently, these defendants are immune because what they did was well within the outerperimeters (sic) of their authority . . .

■ Plaintiff concedes that he did not plead a constitutional violation and does not argue that the government defendants acted beyond the scope of their authority. Indeed, every act with which the government defendants have been charged is within the scope of their duties. Therefore, the district court ruled correctly that the federal officials are immune because it is

> important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would con-

---

**2.** Defendants moved to stay proceedings in the district court pending a decision by the Civil Service Commission on Bradley's discharge. The district court stayed its proceedings over Bradley's objection that the proceeding before the Civil Service Commission had entirely different issues from the case in the district court. After the Commission upheld Bradley's removal, defendants amended their answer to include the defense of estoppel based on the administrative decision of the Civil Service Commission. In a pre-trial order, the district court ruled that plaintiff was collaterally estopped from relitigating any matter litigated before the Civil Service Commission that was decided adversely to him. The ruling took the form of excluding from evidence the propriety of, or fact of, or circumstances giving rise to Bradley's removal, either as an item of damage or as substantive evidence in support of the various causes of action.

The court also ruled in the pre-trial order that Bialick and Champaign were immune from the libel charge with respect to the Letter of Reprimand under the immunity doctrine of *Barr v. Mateo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and *Granger v. Marek*, 583 F.2d 781 (8th Cir. 1978).

The ruling of the district court as to collateral estoppel is strenuously contested on appeal, and, on October 17, 1980, after the appeal was argued, the Merits Systems Protection Board of the Civil Service Commission remanded the case concerning Bradley's discharge to the Administrative Law Judge because it stated that, since the charges against Bradley show on their face a mixed motivation for his removal, one of which involved Bradley's constitutionally protected conduct, its Field Office should have developed a record on that subject. Significantly, though, the remand decision of the Merits Systems Protection Board does not deal in any way with matters respecting the privilege or immunity of the defendants in this case. Neither have we had called to our attention how any evidence excluded by the order of the district court would have altered in any significant way the facts upon which the decision for the defendants was based.

Accordingly, we need not and do not decide whether the district court's ruling as to collateral estoppel was correct. We deny the motion of the plaintiff to remand the case to the district court to reconsider it in the light of the decision of the Merits Systems Protection Board.

As we explain in the body of the opinion, excepting the conspiracy count, the defendants may not be held liable because of their privilege or immunity. The conspiracy count fails for other reasons as well.

sume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Barr v. Mateo*, 360 U.S. 564, 571, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 1434 (1959). Accord *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896).

The trial court applied the doctrine of qualified privilege to the CSC letter of March 3rd about which Bradley complains. That letter, sent to Bradley's superiors, was openly critical of Bradley's use of the CSC-provided technical notes.

■■■ The right to petition for redress of grievances, as protected by the First Amendment, is among the liberties safeguarded by the Bill of Rights. Bradley concedes that complaints about government officials may be qualifiedly privileged because

> presenting complaints to responsible government officials about the conduct of their subordinates with whom the complainer has had official dealings is analogously central to the protections of the right to petition.

*Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342–43 (7th Cir. 1977), cert. den., 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). It is true that the subject of the grievance at issue here is not political, in the sense of a reference to policy issues. It is also true that the grievance may have been motivated by financial self-interest, and that the complainer may have been aware of and pleased by the prospect of injury resulting to the official complained of (Bradley). However, public criticism of governmental policy, government operations, and government officials "is at the very core of the constitutionally protected free speech area." *Stern* at 1342. Therefore, it matters not that the subject of the grievance is not political, because the fact that a grievance does not generate political support "makes the individualized exercise of the right to petition all the more important." *Id.* at 1343. It also matters not if

the grievance is motivated by financial self-interest. In such instances, the right to petition may be most important, and the government's effective operation may depend from time to time on such information. Since a valid complaint, by its very nature, almost always tends to injure the official complained of, this should not affect the propriety of the use of this First Amendment right. CSC's letter is not scurrilous, anonymous, or full of unfounded charges. CSC had to continually coordinate its efforts with DCA in performing its government contract. The letter dealt with a problem CSC had in coordinating its efforts with Bradley, explained the specific problem, and ended with suggestions for improving its coordination with the responsible government officials. To hold that the qualified privilege does not apply for any of these reasons would dissuade government contractors, not to mention citizens in general, who are aware of real or imaginary shortcomings of government employees from communicating their concerns to the proper authorities who can evaluate such complaints and take appropriate action if the complaints are justified. There is no doubt that the prospect of a lawsuit resulting from a complaint to a superior about federal employees would chill the exercise of the right to petition. We only add that the district court's finding that the qualified privilege was not abused is free from error.

■■■ The conspiracy charge was aptly described by the district court at one place in the proceeding as a conspiracy among the defendants to do the other acts charged to them. The plaintiff takes that position and also the position that he charged a conspiracy under 42 U.S.C. § 1985(1). The district court directed a verdict for the defendants on that cause of action for lack of evidence, whether it might be considered as a common law tort or as a violation of 42 U.S.C. § 1985(1). We think this ruling was correct.

In this connection, the plaintiff argues that the qualified immunity standard of *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), should apply

instead of the more nearly absolute privilege of *Barr* and *Spalding*, and this despite the specific holding in *Butz*, note 22, p. 495, 98 S.Ct. note 22, p. 2905, confining that case to "constitutional issues." The plaintiff argues that the *Butz* standard applies where a charge of a violation of federal statute, here 42 U.S.C. § 1985(1), is claimed. Because there is no evidence of any violation of that statute, we need not decide whether or not the *Butz* standard of immunity is applicable to this case.

The judgment of the district court is accordingly

AFFIRMED.