Richard D. BUSHMAN, et al., Appellants,

v.

Joseph E. SEILER, et al., Appellees.

No. 84–1313.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1984.

Decided Feb. 25, 1985.

James E. Lownsdale, St. Louis, Mo., for appellants.

Joseph Moore, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Richard D. and Robert L. Bushman appeal the judgment of the district court[1] dismissing their libel claim against Joseph E. Seiler on the grounds that he was protected by sovereign immunity while acting as a consultant to a Medicare carrier. The Bushmans argue that the case should have been remanded to the state court, that Seiler was not entitled to sovereign immunity, and that they should have been given a jury trial. We affirm the judgment of the district court.

The Bushmans are podiatrists who were receiving Medicare payments for treating patients in nursing homes around St. Louis. Seiler, also a podiatrist, occasionally acted as a podiatry consultant for General American Life Insurance Company, a Medicare carrier for the Department of Health and Human Services. At General American's request, Seiler investigated the Bushman services at various nursing homes and sent a letter to General American that contained the following statement:

> It would seem that the doctors Bushman have determined that anyone who reaches the age where they are covered by Medicare has peripheral vascular disease. Obviously, these patients do not have the peripheral vascular status that they had when they were thirty years old, but it does not necessarily mean that they are diseased.

As a result of the letter, the Bushmans brought an action in state court for libel and slander against General American, Seiler and Seiler's corporation, Podiatry Surgical Services, Inc. The case was removed to the district court. General American was dismissed because the court found that it was entitled to governmental immunity. The court then denied the Bushmans' motion to remand the case to state court and refused their demand for a jury trial. At the close of the plaintiffs' evidence, the court dismissed Seiler and his corporation on sovereign immunity grounds.

## I.

The first issue is whether the court erred in denying the motion to remand. The Bushmans argue that when General American was dismissed, all that remained was an independent action between Missouri residents. A federal court has the power, however, to retain jurisdiction where the party giving rise to federal jurisdiction has been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–28, 86 S.Ct. 1130, 1138–40, 16 L.Ed.2d 218 (1966). When removal jurisdiction is premised on a federal defendant who is subsequently dismissed, the decision to remand the remaining claims to state court is committed to the district court's discretion. *Falls Riverway Realty v. City of Niagara Falls*, 732 F.2d 38, 42 (2d Cir.1984); *Murphy v. Kodz*, 351 F.2d 163, 167–68 (9th Cir.1965); *Givoh Associates v. American Druggists Insurance Co.*, 562 F.Supp. 1346, 1352 (E.D.N.Y.1983); *Rotermund v. United States Steel Corp.*, 346 F.Supp. 69, 76 (E.D.Mo.1972), *aff'd on other grounds*, 474 F.2d 1139 (8th Cir.1973). Bushman urges that the district court abused its discretion in failing to remand because only matters of state law remained. As our discussion of the immunity question will

---

1. The Honorable John K. Regan, Senior United States District Judge for the Eastern District of Missouri.

reveal, federal law was determinative of the suit against Seiler. Consequently, the district court properly retained jurisdiction. *See IMFC Professional Services v. Latin American Home Health*, 676 F.2d 152, 160 (5th Cir.1982).

## II.

The next question is whether the district court properly dismissed Seiler and his corporation as defendants.[2] This suit was brought against Seiler as an individual, with the Bushmans alleging that he acted outside the scope of his official duties. Nevertheless, Seiler's relationship to the Medicare program may shield him with official immunity. *See Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (plurality opinion); Jaffe, *Suits Against Governments and Officers: Damage Actions*, 77 Harv.L.Rev. 209, 232–35 (1967) In deciding this question, two related components are important: was Seiler a government official for immunity purposes; if so, did the act complained of have a connection to his official duties sufficient to justify invoking the immunity.

### A.

▮ Seiler's link to the federal government is indirect. He was employed as a consultant by an insurance company that served as a Medicare carrier for the Department of Health and Human Services. The insurance company acted as an agent of HHS. *See Peterson v. Weinberger*, 508 F.2d 45, 51–52 (5th Cir.), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975); 42 U.S.C. §§ 1395h, 1395u (1982). Regulations provide that such companies act on behalf of the agency in carrying out administrative responsibilities that the law impos-

es. 42 C.F.R. § 421.5(b) (1983). It is well settled that Medicare intermediaries and carriers can be governmental agents for immunity purposes. *See Anderson v. Occidental Life Insurance Co.*, 727 F.2d 855, 856 (9th Cir.1984); *Matranga v. Travelers Insurance Co.*, 563 F.2d 677 (5th Cir.1977); *Peterson*, 508 F.2d at 51; *cf. Group Health Inc. v. Blue Cross Association*, 587 F.Supp. 887, 891 (S.D.N.Y.1984) (HHS fiscal intermediary is a "federal official" for removal under 28 U.S.C. § 1442(a)(1) (1982)). Under the circumstances of this case, official status should be extended to Seiler as a consultant to a Medicare carrier. *See Blum v. Campbell*, 355 F.Supp. 1220, 1224 (D.Md.1972).

### B.

▮ Since Seiler is a federal official for at least some purposes, he enjoys immunity from common law tort liability for actions within the scope of his authority. *See Barr*, 360 U.S. at 573–74, 79 S.Ct. at 1340–41. Such actions must have been "within the outer perimeter" of Seiler's line of duty for the immunity to apply. *See id.* at 575, 79 S.Ct. at 1341. More specifically, "the act must have more or less connection with the general matters committed by law to the officer's control or supervision, and not be manifestly or palpably beyond his authority." *Gross v. Sederstrom*, 429 F.2d 96, 100 (8th Cir.1970) (quoting *Norton v. McShane*, 332 F.2d 855, 859 (5th Cir.1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965)). Seiler's actions satisfy these standards. At oral argument, the Bushmans conceded that Seiler was acting within the scope of his duties as a consultant when he sent the letter. The Bush-

---

**2.** 42 C.F.R. § 421.5(b) (1983) provides:

Intermediaries and carriers act on behalf of the Administrator in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of the Administrator and the Administrator is the real party of interest in any litigation involving the administration of the program.

The district court found that this provision invoked sovereign immunity for General American and Seiler. The decision regarding General American was not appealed. Because we find that Seiler was entitled to official immunity, we need not determine whether the district court correctly applied the defense of sovereign immunity. *See generally Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1012–16 (8th Cir.1984); *Foster v. Day & Zimmermann, Inc.*, 502 F.2d 867, 874–75 (8th Cir.1974).

mans argue, however, that the wrongful nature of the letter's contents is sufficient to strip the immunity. Such a finding would unduly restrict the official immunity defense.

> [T]o separate the activity that constitutes the wrong from its surrounding context—an otherwise proper exercise of authority—would effectively emasculate the immunity defense. Once the wrongful acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available. Thus, the defense would apply only to conduct for which it is not needed.

*Wallen v. Domm,* 700 F.2d 124, 126 (4th Cir.1983). That a statement is alleged to be false or libelous does not necessarily deprive the official of immunity. *See Barr,* 360 U.S. at 575, 79 S.Ct. at 1341; *Gross v. Sederstrom,* 429 F.2d at 100.

We find persuasive the decision of the Fourth Circuit in *Bradley v. Computer Sciences Corp.,* 643 F.2d 1029 (4th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981). Employees of a government contractor wrote a letter to Defense Department officials charging a government worker with misrepresenting the status of a contractor's report. The court held that the employees were shielded by official immunity. *Id.* at 1033. Underlying the holding was a recognition that public criticism of government operation should be encouraged. Unless such criticism is privileged, "government contractors * * * who are aware of real or imaginary shortcomings of government employees" would be dissuaded from communicating their concerns to the proper authorities. "There is no doubt that the prospect of a lawsuit resulting from a complaint would chill the exercise of the right to petition." *Id.*[3]

To the same effect is *Becker v. Philco Corp.,* 372 F.2d 771 (4th Cir.), *cert. denied,* 389 U.S. 979, 88 S.Ct. 408, 19 L.Ed.2d 473 (1967). Plaintiffs, employees of a defense contractor, alleged that their employer defamed them in security reports submitted to the federal government. The court found the contractor was entitled to official immunity, mentioning two factors: the report was transmitted confidentially, within internal government operations; and the report was required by the Defense Department as a matter of contract. *Id.* at 773–75. Similar factors appear in the present case. Seiler communicated the report because General American was required to perform audits, and the report was for internal use. *See generally* 42 C.F.R. § 421.200 (1983) (functions of Medicare carriers). Applying immunity here is consistent with protecting "officials who are required to exercise their discretion" and promoting the "public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978). We conclude, therefore, that Seiler is entitled to official immunity.[4]

### III.

■ Finally, the Bushmans are not entitled to relief on their demand for a jury trial. Seiler presented his immunity defense as a motion for dismissal. *See* Fed. R.Civ.P. 41(b). In sustaining the motion, the court considered it equivalent to a motion for a directed verdict.[5] Consequently,

---

3. The plaintiffs also urge that Seiler's letter was prompted by his desire to profit by indirectly taking over the nursing home patients that the Bushmans served. This allegation does not bar Seiler's immunity, for it "matters not that the grievance is motivated by financial self-interest." *Bradley,* 643 F.2d at 1033.

4. There was no allegation that Seiler's corporation was liable apart from Seiler's acts. Because Seiler is entitled to immunity, his corporation, whether as employer or principal, is similarly protected.

5. We recognize the distinction between a district judge's ruling on a motion for dismissal in a bench trial and a motion for a directed verdict. *See Continental Casualty Co. v. DLH Serv.,* 752 F.2d 353 at 355–356 (8th Cir.1985). The result in this case would be the same under either standard because the district court decided that Seiler was protected by immunity as a matter of law.

the case would not have been considered by the jury had one been impaneled. The denial of the jury trial was, therefore, harmless error. *See United States v. Williams*, 441 F.2d 637, 644 (5th Cir.1971).

The judgment of the district court is affirmed.