**CENTRAL CLAIMS SERVICE, INC.**

**v.**

**COMPUTER SCIENCE CORPORATION.**

Civ. A. No. 88–4029.

United States District Court, E.D. Louisiana.

Feb. 10, 1989.

464

Law Offices of Ferdinand Kleppner, Ferdinand J. Kleppner, Metairie, La., for Central Claims Service, Inc.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Roy C. Cheatwood, Trial Atty., Nancy Scott Degan, Paul L. Peyronnin, New Orleans, La., Richard J. Brooks, Lanham, Md., for Tim Johnson, Michael Bellmon, Alan Baitler, J.D. Reid and Computer Sciences Corp.

## ORDER AND REASONS

FELDMAN, District Judge.

This case arises out of an asserted implied-in-fact contract between plaintiff, an independent insurance claims adjustment agency, and defendant, Computer Science Corporation, fiscal agent for the Federal Emergency Management Agency under the federally-created National Flood Insurance Program (NFIP).

In the spring of 1988, the New Orleans area experienced heavy rains and flooding. As a result, the Federal Emergency Management Agency set up a Flood Insurance Claims Office (FICO) to oversee the processing of government-subsidized flood loss claims. The joint leadership of NFIP/FICO held an adjusters meeting, attended by plaintiff's representatives, to counsel adjusters about how to handle claims regarding losses from area flooding. At the meeting, NFIP/FICO personnel allegedly informed adjusters that they were required to turn over any claims procured before FICO opened so that the claims could be reallocated.

Defendant says that plaintiff failed to voluntarily submit to the NFIP/FICO officials the flood insurance claims that it had solicited from independent agents. Consequently, defendant sent a letter, dated April 25, 1988, that detailed plaintiff's failure to follow NFIP procedures, and advised that plaintiff had been terminated from the National Flood Insurance Program and from the list of adjusters and companies authorized to handle flood losses.

The April 25th letter forms the basis for plaintiff's suit. Plaintiff alleges that when Computer Science Corporation terminated plaintiff from the NFIP, it breached an implied-in-fact contract with the plaintiff. Plaintiff further adds that it suffered lost revenue and loss of reputation in the community and throughout the insurance industry. Plaintiff has also filed suit against the United States in the Court of Claims and makes essentially the same charges of wrongdoing.

Defendants, Computer Science Corporation and individually named employees, move this Court to dismiss plaintiff's complaint pursuant to Fed.R.Civ.Pro. 12(b)(6) or for summary judgment. Defendants' motion, which is treated as one of summary

judgment because of matters raised beyond the pleadings, is GRANTED.

## I. *Background: The National Flood Insurance Program*

The National Flood Insurance Program was established by Congress in the National Flood Insurance Act of 1968. 42 U.S.C. §§ 4001–28. The program was designed to provide flood insurance protection to property owners in flood-prone areas under national policy promulgated by the Federal Emergency Management Agency (FEMA). 44 C.F.R. § 61, Appendix A(1).

In 1977, the Secretary of Housing and Urban Development discontinued the original NFIP statutory plan, under which the private insurance industry implemented the policy of the flood program. Under the new program, primary operational responsibility shifted from private industry to the federal government. 42 U.S.C. § 4071. The NFIP is currently operating under this system.

Congress provided, in the new plan, authorization for the appointment of a "servicing agent" to assist the NFIP in issuing and processing flood insurance applications and claims. 42 U.S.C. § 4071. The FEMA regulations authorized the servicing agent to "assist in issuing flood insurance policies . . . and to accept responsibility for delivery of policies and payment of claims for losses as prescribed by and at the discretion of the Administrator." 44 C.F.R. § 62.3(a). The regulations further provided that, "The servicing agent will arrange for the issuance of flood insurance to any person qualifying for such coverage . . . who submits an application to the servicing agent in accordance with the terms and conditions of the contract between the Agency and the servicing agent." 44 C.F.R. § 62.3(c).

On October 1, 1983, FEMA designated defendant, Computer Science Corporation, as a servicing agent for the NFIP. 48 Fed.Reg. 44544 (1983) (codified at 44 C.F.R. § 62.3(b)). In its capacity as a FEMA servicing agent, Computer Science Corporation and its named employees engaged in the actions which plaintiff targets in this suit.

## II. *Plaintiff's Breach of Contract Claim*

Plaintiff claims that defendants breached an implied-in fact contract when plaintiff was terminated from the National Flood Insurance Program. Because defendants were acting under the regulatory guidelines for claim processing that the Federal Emergency Management Agency and the Flood Insurance Claims Office had enacted, plaintiff's intrinsic claim is that defendants impermissibly exercised their delegated authority. However, in similar cases under both the National Flood Insurance Act and the Social Security Act, courts have traditionally held that such claims could not be brought against an agent of the government, because the United States was the real party in interest, or because the agent enjoyed sovereign immunity. Their doctrine applies here.

For example, in *Yonker v. Guifrida,* 581 F.Supp. 1243 (D.W.Va.1984), plaintiffs sought to recover monetary damages from defendant, a servicing agent under the National Flood Insurance Program, for defendant's alleged breach of a flood insurance policy. The court dismissed plaintiff's complaint, holding that Congress intended only those entities which are ultimately responsible for the adjustment and payment of claims under the program to be legally responsible for the wrongful denial of a claim. Because the court found that the Federal Emergency Management Agency was ultimately responsible for the actions of its fiscal agent, the court held that the agent was not a proper party to the plaintiff's suit. Computer Science Corporation is clearly FEMA's fiscal agent.

Although the Fifth Circuit has never spoken to the role of fiscal agents under the National Flood Insurance Program, the court has reviewed cases in the related universe of Medicare Act claims. They counsel the same result. In *Matranga v. Travelers Ins. Co.,* 563 F.2d 677 (5th Cir. 1977), plaintiff sued a Medicare carrier alleging that defendant was liable for willful and wanton misconduct in processing Medicare claims submitted to Travelers to cover professional services rendered to

nursing home patients. Specifically, plaintiff alleged that Travelers wrongfully withheld payments to plaintiff and referred his case to the Social Security Administration for investigation.

Pointing to an earlier Fifth Circuit case, *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.1975), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975), in which the court held that a district court lacked jurisdiction over Medicare fiscal intermediaries under the doctrine of sovereign immunity, the *Matranga* court instructed:

> The Medicare Act authorizes the Secretary of Health, Education and Welfare to provide for the administration of the Act through contract "carriers." 42 U.S.C. § 1395u (1970) (amended 1976). Travelers is such a carrier. Although Travelers makes determinations of amounts to be paid on claims and disburses funds provided by the government, the United States is the real party in interest. 20 C.F.R. § 405.670 (1977).
>
> Travelers was acting under the direction of the Secretary of Health, Education and Welfare and there is nothing in the record to indicate that Travelers was acting outside the perimeters of its official duties in its dealings with Dr. Matranga. The district court erred in declining to grant Travelers' motion for summary judgment.

563 F.2d at 677–78.

The *Matranga* rationale must conceptually extend to fiscal intermediary sovereign immunity cases under the National Flood Insurance Act. Just as the Medicare Act provided for fiscal intermediaries between the Department of Health, Education and Welfare and Medicare claimants, so the National Flood Insurance Act and National Flood Insurance Program structure the relationship of fiscal intermediaries between the Federal Emergency Management Agen-

cy and individual claim adjusters and claimants.

Although plaintiff contends that Computer Science Corporation impermissibly exercised its delegated authority, plaintiff does not dispute that the defendant acted as an agent of a federal agency, within "the perimeters of its official dealings" with plaintiff. Defendant's status as a federal agent is indisputable because FEMA designated the defendant as its official servicing agent for processing NFIP claims, a relationship that has been statutorily constructed. 44 C.F.R. § 62.3(b). Thus, this Court must conclude that the United States is the real party in interest in this suit, that defendants are shielded by sovereign immunity, and that plaintiff's breach of contract claim must be dismissed. *See also, Anderson v. Occidental Life Insurance Co.*, 727 F.2d 855, 856 (9th Cir.1984); *cf. Group Health Inc. v. Blue Cross Association*, 587 F.Supp. 887, 891 (S.D.N.Y.1984) (Fiscal intermediary of the Department of Health and Human Services is a "federal official" for purposes of removal under 28 U.S.C. § 1442(a)(1)).[1]

### III. *Plaintiff's Defamation Claim*

■ Defendants are similarly shielded by sovereign immunity from any claim by plaintiff that it was defamed and suffered loss of reputation in the community and insurance industry. The letter which is central to plaintiff's complaint was sent by a Computer Science Corporation employee in the exercise of an official duty; plaintiff does not contend otherwise, although it questions the factual comments contained within the letter.

The facts of record are again similar to those in other cases in which courts have dismissed defamation claims. For example, in *Bushman v. Seiler*, 755 F.2d 653 (8th Cir.1985), plaintiffs filed a libel and slander action against a consultant employed by a Medicare carrier for the De-

---

1. This case must be distinguished from cases holding that sovereign immunity should not be extended to federal insurers where the insurer was the actual underwriter, rather than the fiscal intermediary of a federal agency providing insurance. *See, e.g., Nu-Air Manufacturing Co. v. Frank B. Hall & Co.*, 822 F.2d 987 (11th Cir.1987). Defendants here acted as a link between the Federal Emergency Management Agency and independent claims agents; it is this role as a vehicle for effectuating government policy that confers sovereign immunity on them.

partment of Health and Human Services. In *Bushman,* plaintiffs alleged that defendant libelled and slandered them by sending a letter to plaintiffs' insurer which stated:

It would seem that the doctors Bushman have determined that anyone who reaches the age where they are covered by Medicare has peripheral vascular disease. Obviously, these patients do not have the peripheral vascular status that they had when they were thirty years old, but it does not necessarily mean that they are diseased.

*Id.* at 654. The district court dismissed plaintiffs' claim on sovereign immunity grounds and the Eighth Circuit affirmed, noting that as a quasi-federal official, the defendant enjoyed immunity from common law tort liability for actions within the scope of his authority.

The Fifth Circuit has held that the test of whether an official is acting within the scope of his authority is whether "the act [has] more or less connection with the general matters committed by law to the officer's control or supervision, and [is] not ... manifestly or palpably beyond his authority." *Norton v. McShane,* 332 F.2d 855, 859 (5th Cir.1964), *cert. denied,* 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965). The *Bushman* court, applying the same test, found that the defendant had acted within the scope of his authority, and rejected plaintiffs' argument that the wrongful nature of the letter's contents was sufficient to strip the immunity defense of its force. As the court explained:

[T]o separate the activity that constitutes the wrong from its surrounding context —an otherwise proper exercise of authority—would effectively emasculate the immunity defense. Once the wrongful acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available. Thus, the defense would apply only to conduct for which it is not needed.

755 F.2d at 656, *quoting Wallen v. Domm,* 700 F.2d 124, 126 (4th Cir.1983).

Moreover, the Supreme Court has emphasized that, as a matter of public policy, sovereign immunity must be preserved so that federal officials can effectuate the policies necessary for effective governance. In *Barr v. Mateo,* 360 U.S. 564, 571, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 1434 (1959) the Court counselled:

It is important that officials of government should be free to exercise their duties unembarassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

It is clear that this public policy, which gives content to the notion of sovereign immunity, applies to agents of federal governmental bodies, like Computer Science Corporation, as well as to the officers and employees of those bodies. *See, e.g., Bradley v. Computer Sciences Corporation,* 643 F.2d 1029 (4th Cir.1981), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981).

As this Court has already noted, fiscal intermediaries of the Federal Emergency Management Agency are functionally indistinguishable from the Medicare intermediaries of the Department of Health and Human Services mentioned in the case literature. Thus, the *Bushman* doctrine—that Medicare carriers, as intermediaries of HHS, are federal officials entitled to sovereign immunity from defamation claims arising out of acts within the scope of their authority—applies with equal force to the defendants in this case. Plaintiff's defamation claim is therefore dismissed.

### IV. *The So-Called Bivens Claim*

■ Finally, plaintiff alleges that it has "set forth a Bivens cause of action" pursuant to *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, this Court's review of plaintiff's complaint reveals no such pleading. A *Bivens* action is only cognizable if plaintiff pleads a violation of a constitutional right. Plaintiff's complaint, however, merely states griev-

ances for breach of contract and defamation, and these claims are not characteristically of constitutional dignity. *See, e.g., Schlake v. Beatrice Production Credit Assoc.,* 596 F.2d 278, 281 (8th Cir.1979) (A constitutional violation is not committed "when a governmental agency breaches a contract it has entered into in the commercial world"; "neither the framers of the Constitution nor the people at the time of the adoption of the fourteenth amendment intended that the 'due process clause' should serve to rationalize all actions sounding in tort or contract into federal cases.").

Even if this Court were to construe plaintiff's complaint as somehow stating a due process offense, the immunity doctrine would again shield the defendants from suit. In *DeVargas v. Mason & Hanger–Silas Mason Company, Inc.,* 844 F.2d 714 (10th Cir.1988) plaintiff sought to assert a *Bivens* cause of action against a government contractor because defendant refused to process his application for employment on the grounds that then-applicable Department of Energy regulations provided that persons with vision in only one eye were medically disqualified from security inspector duties. The Tenth Circuit held that defendant was entitled to immunity from plaintiff's suit because, as a government contractor, it had acted in accordance with government directives.

Here are the court's words:

The type of case before us presents the strongest arguments for extending qualified immunity to private party defendants. First, the governmental authority involved requires private defendants to act as they do. Indeed, were they to act otherwise they would likely be liable for breach of contract to the governmental body with whom they contracted. Not to allow immunity here places defendants between Scylla and Charybdis-potentially liable either to plaintiffs for obeying the contract, or to governmental bodies for breaching it.

Second, the functions which the private parties performed pursuant to contract are functions which governmental employees would perform had the government not contracted them out. The Supreme Court instructs courts to examine the function of individual defendants—the nature of the individual responsibilities—not their status, in resolving immunity defenses. We conclude that when private party defendants act in accordance with the duties imposed by a contract with a governmental body, perform a governmental function, and are sued solely on the basis of those acts performed pursuant to contract, qualified immunity is proper.

*Id.* at 721–22.

On this motion, then, the inquiry is: Does the record establish a genuine issue of material fact about whether the defendants acted in accordance with their statutory duties? Computer Science Corporation, in its capacity as servicing agent for the Federal Emergency Management Agency, functionally equates to the government contractor in *DeVargas.* Like the defendant in *DeVargas,* Computer Science Corporation clearly acted at the direction of FEMA, a government agency. 44 C.F.R. §§ 62.3(a)(c). Moreover, the actions which plaintiff contends give rise to a *Bivens* action were performed in the scope of defendants' official authority. Thus, even assuming that plaintiff had sufficiently pleaded a *Bivens* cause of action, defendants would be immune from such suit.

Plaintiff correctly asserts that if the defendants acted beyond the scope of their authority, then qualified immunity would be unavailable to them as a defense to the *Bivens* claim. However, plaintiff has not on this record demonstrated that a material fact dispute exists. Some of the evidence submitted by the plaintiff to establish a fact dispute to defeat summary judgment supports defendants' claim that they acted within the authority vested in them by the Federal Emergency Management Agency and the National Flood Insurance Program.

Plaintiff submits several self-serving affidavits by plaintiff's own adjusters in which the affiants conclusorily allege that

they followed NFIP procedure.[2] However, the record before the Court compels the conclusion that in fact defendants acted within their authority when they removed and reallocated the plaintiff's files. For example, in a letter from J.D. Reid, Director of Claims Administration for the National Flood Insurance Program, to James Jones, President of Central Claims Service, Inc., Mr. Reid stated:

> Based on your previous experience with us, I feel it is safe to assume that your firm was aware of our procedures, yet despite this, you elected to retain and work the claims instead of notifying us that you had received them from the agents. This caused a great deal of confusion in our assignment efforts and undue inconvenience to our policyholders. Mandatory attendance at our FICO Adjuster Meetings is also a longstanding procedure and is designed to provide the adjusters with up-to-date policy interpretation and relate our operational concerns to the adjusters who are, after all, our primary contact with the policyholders. Since the meeting attendance policy has also remained unchanged, I must assume in this instance that you were aware of our requirement and elected not to comply.
>
> Based on the information available to me, I must, unfortunately, stand by the decision to suspend your firm as was communicated to you by Mr. Baitler, in his April 25, 1988 correspondence.

Similarly, Harold T. Duryee, Administrator of the Federal Insurance Administration, wrote to both Senator John Breaux and Representative Lindy Boggs, to address the complaint that defendants had wrongfully recalled the flood insurance files assigned to the plaintiff. In those letters Mr. Duryee explained that NFIP regulations specifically authorize the recall and reassignment of flood insurance files. Regarding the specific actions of the defendants, Mr. Duryee states:

> As to the assignment to Central Claims Service, Inc., while some fifty-six of

these files were subjected to recall and redistribution, the action taken was consistent with the procedures the NFIP normally employs, as described herein. All of these losses had been assigned by local agents after the NFIP had made known its decision to open a local claim office and it was the belief of NFIP staff, based upon its understanding of the extent of Central Claims Service Inc.'s resources, that timely service to our policyholders would not necessarily be likely, if these losses were to remain with the firm for investigation and adjustment.

> At the time the decision was made, NFIP records reflected that the firm had only 7 adjusters available to adjust losses assigned to the firm. Given a requirement that the insured be contacted within 24 hours and that the NFIP receive a preliminary report within ten days of assignment, it was not believed to be a reasonable expectation that these policyholder service deadlines would be met.

> . . . .

> Based on the information available, we cannot find that the decision made by the servicing agent, in respect to reassigning some of the losses assigned to Central Claims Service, Inc. was unreasonable under the circumstances.

Plaintiff argues that Mr. Duryee's letter incorrectly states that, exclusive of the reassigned files, Central Claims Service received 53 losses and, plaintiff contends that it in fact received only 3 losses. This proves, plaintiff adds, that defendants acted beyond the scope of their authority because they did not equally reallocate losses among area adjusters. The argument is without reason. It strains to create a fact issue. It simply does not follow that if plaintiff received fewer files than Mr. Duryee stated, defendants somehow acted beyond their authority. Plaintiff has presented no evidence to this Court that the NFIP/FEMA regulations require perfect parity among adjuster firms in claims allocation. Plaintiff has not demonstrated that

---

**2.** The Fifth Circuit has noted in *Fontenot v. Upjohn Co.,* 780 F.2d 1190 (5th Cir.1986) that "[t]here is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them...."

in reallocating to Claims Services Corporation fewer files than other adjusters received, defendants thwarted the goal of efficient policyhandling and therefore exceeded their delegated authority.

On the record before the Court, in this summary judgment context, the Court finds no material issue of fact in dispute which implicates conduct outside defendants' scope of authority for purposes of the mortality of plaintiff's *Bivens* claim, had it been properly pleaded. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Industrial Corp. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986).

### V. *Conclusion*

Defendant, Computer Science Corporation is a designated servicing agent of the Federal Emergency Management Agency under the National Flood Insurance Program. When acting in this intermediary capacity, defendant assumes a quasi-federal official status; it takes on the role of a federal official; as such, the defendant enjoys sovereign immunity from suits based on acts within the scope of the defendant's authority.

Plaintiff's claims for breach of implied contract damages and for damages from loss of reputation in the community and insurance industry indisputably arise out of an act clearly within the scope of defendant's official duties: the termination of plaintiff from the National Flood Insurance Program and from the list of adjusters authorized to handle flood losses under the federally-constructed system. Thus, Computer Science Corporation and the other named defendants are immune from the suit plaintiff has brought here. Defendants' motion is GRANTED and the Complaint is dismissed with all costs taxed to plaintiff. The Clerk will enter judgment.