Charles P. CAUDLE, Plaintiff,

v.

Harry THOMASON, Defendant.

Civil Action No. 94–0707.

United States District Court,
District of Columbia.

April 25, 1996.

James K. Archibald, David W. Goewey, Venable, Baetjer, Howard & Civiletti, Washington, DC, Douglas E. Kahle, Pender & Coward, Virginia Beach, VA, for Plaintiff.

Robert S. Bennett, Richard L. Brusca, Katharine R. Stollman, Laura A. Ingraham, Skadden, Arps, Slate, Meagher & Flom, Washington, DC (Michael J. Plonsker, Lavely & Singer, Los Angeles, CA, of counsel), for Defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This case is before the Court on defendant's motion to dismiss. Upon consideration of that motion, plaintiff's opposition, and defendant's reply, the Court concludes that the motion should be granted in part and denied in part.

## I

This case, alleging defamation, is related to the problems in the White House Travel Office. Plaintiff, Charles Caudle, was the president and Chief Executive Officer of Airlines of the Americas, Inc. ("AOA"), which was subsequently renamed UltrAir, Inc. AOA provided charter service to the White House Press Corps until some time in May of 1993, pursuant to travel arrangements made by the White House Travel Office. From January 1992 to May 1993, AOA provided approximately $2.5 million worth of domestic air travel to the White House Press Corps.

Defendant, Harry Thomason, is a one-third owner of an aviation consulting and charter firm, Thomason, Richland, & Martens, Inc. ("TRM"). In February of 1993, Thomason contacted Dee Dee Myers, the then-White House Press Secretary, and Billy Dale, head of the White House Travel Office, to inquire about the possibility of having TRM provide air charter service for the travel office.

The complaint filed in this case alleges that Thomason and Darnell Martens, a one-third owner and president of TRM, undertook a "campaign to discredit Mr. Caudle," and thereby win for TRM the White House Travel business from AOA. The complaint is in two counts, one for libel, the other for slander. The libel claim is based on a memorandum that is attached to the amended complaint as an exhibit. The memorandum is marked "CONFIDENTIAL" and is entitled "WHITE HOUSE PRESS CHARTERS." The author of the memorandum is not indicated, but in the complaint, Caudle alleges that the memorandum "was drafted and/or published in whole or in part by Defendant Thomason or at Thomason's behest." The memorandum states that Billy Dale had told Martens that there was no possibility of TRM earning the White House business. The memo notes that "the White House Press Corps has been flown on a virtually exclusive basis by [AOA and its predecessors]." The memo further states that:

> [AOA] is a Republican-operated charter airline. The company ran into controversy during the [1992] presidential campaign when it provided press transportation without chargebacks to the press in order to insure good press coverage of Bush campaign appearances.

AOA wanted the flights to be considered a contribution but this was denied by the FEC/DOT subsequent to a complaint initiated by David Buxbaum of the Clinton/Gore '92 Committee. The uncompensated flights were discontinued to the satisfaction of the concerned government agencies.

The memo concluded that the semi-exclusive use of one domestic air charter service "is not illegal. It probably isn't unethical." The memo summarized that "[AOA] attempted to provide free transportation to press covering Bush campaign appearances" and that "[Dale] must have been aware of the above aborted attempt to provide free transportation and took no subsequent action."

The slander claim is premised on statements allegedly made by Thomason to First Lady Hillary Rodham Clinton, and to various members of the White House Staff and the Clinton Administration, including Catherine Cornelius, Jeffrey Eller, Vincent Foster, William Kennedy III, Mack McLarty, George Stephanopoulos, Dee Dee Myers and David Watkins. In these statements, Thomason allegedly claimed or suggested that Caudle was involved in corrupt practices with the White House Travel Office and that Caudle was paying or providing illegal kickbacks to the White House Travel Office.

Thomason has moved to dismiss the complaint on several grounds. He argues that the complaint fails to state a claim for libel because: (1) the statements were not "of and concerning" Caudle, (2) Caudle has failed to identify any defamatory statements, (3) Caudle did not allege any actionable republication, and (4) the communications are privileged. As for the slander claim, Thomason contends that it is barred by the statute of limitations. The Court will address each of these in turn.

## II

The standard to be applied in reviewing a motion to dismiss for failure to state a claim is well established:

For purposes of determining whether a plaintiff has failed to state a cause of action, the factual allegations of the complaint must be taken as true, and any ambiguities or doubts must be resolved in favor of the pleader. Despite this generous standard, the complaint must set forth sufficient information to suggest that there exists some recognized legal theory upon which relief can be granted. A court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish a right to relief based upon those facts.

*Gregg v. Barrett,* 771 F.2d 539, 547 (D.C.Cir. 1985) (internal citations and punctuation omitted). The Court must limit its review to the pleadings, and the "defendant must show 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *In re Swine Flu Immunization Prods. Liability Litigation,* 880 F.2d 1439, 1442 (D.C.Cir.1989) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1955)).

### A.

■ Thomason first argues that the allegedly libelous statements were not "of and concerning" Caudle, because they referred only to AOA. Plaintiff does not dispute that he must show that the remarks were "of and concerning him." He argues that because he was the president and Chief Executive Officer of AOA, any allegations of wrongdoing on the part of AOA implicated him personally.

Even though the statements do not explicitly refer to Caudle, Caudle may prevail if a listener would reasonably believe that the statements referred to him. *See* RESTATEMENT (SECOND) TORTS § 564 cmt. b (1976). As this Court stated in *Cunningham v. United Nat'l Bank of Washington:*

> The requirement that the libelous statement "must leave no doubt" as to the person's identity[ ] is met by the fact that the statements were specific enough that some readers could precisely identify the person mentioned in the [defamatory statement] as [plaintiff]. While the published statements would not implicate her in the minds of layman readers, they probably

would leave "no doubt" in the minds of those familiar with the situation [to which the defamatory remarks referred].

710 F.Supp. 861, 863 (D.D.C.1989) (internal citations and emphasis omitted). Accordingly, courts have held that "if plaintiff can prove that the defamatory remarks directed against the corporation also concerned him personally, he will have a proved cause of action for libel." *Patzer v. Liberty Communications, Inc.,* 58 Or.App. 679, 650 P.2d 141, 143 (1982); *see also Murdaugh Volkswagen, Inc. v. First Nat'l Bank of South Carolina,* 801 F.2d 719, 725 (4th Cir.1986) (individual closely associated with corporation may recover for defamation of corporation where libel of corporation personally concerned the individual plaintiff).

Caudle was the CEO and President of AOA and was otherwise closely associated with AOA. He alleges in the complaint that he "made all business decisions regarding corporate actions which are the subject matter of this lawsuit." Taking these allegations to be true, and resolving all ambiguities in favor of Caudle, *see Gregg,* 771 F.2d at 547, the Court is unable to say that a reasonable listener, familiar with the White House Travel Office, *see Cunningham,* 710 F.Supp. at 863, would not infer that Caudle was responsible for or involved with the alleged wrongdoings of AOA. Thus, the Court is unable to say that there are no set of facts plaintiff can prove which would entitle him to relief. *See In re Swine Flu Prods. Liability Litigation,* 880 F.2d at 1442. That, of course, is sufficient to defeat a motion to dismiss.

### B.

■ Next, Thomason argues that Caudle has failed to identify any defamatory statements and has failed to plead the defamatory statements with particularity. In order to plead defamation, a plaintiff should allege specific defamatory comments, *see Leo Winter Assocs. v. Department of Health & Human Svcs.,* 497 F.Supp. 429, 432 (D.D.C. 1980), by "plead[ing] the time, place, content, speaker, and listener of the alleged defamatory matter." *Wiggins v. Philip Morris, Inc.,* 853 F.Supp. 458, 465 (D.D.C.1994). A statement is defamatory "'if it tends to in-

jure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community.'" *Howard Univ. v. Best,* 484 A.2d 958, 988–89 (D.C.1984) (quoting *McBride v. Merrell Dow & Pharmaceuticals,* 540 F.Supp. 1252, 1254 (D.D.C.1982)). The issue of whether a statement carries a defamatory meaning is a factual one:

> The trial judge has the responsibility to determine whether the statements in question are capable of carrying a defamatory meaning; only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot reasonably be understood in a defamatory sense, can it rule as a matter of law that it was not libelous.

*Id.* at 989.

■ The complaint alleges the time, place, speaker, and listener of the alleged libel. With respect to the defamatory content of the statement, paragraphs 14 and 15 of the amended complaint quote and refer to various parts of the memo which plaintiff alleges to be defamatory. Considering these allegations, the Court is unable to say that "the publication is not reasonably capable of any defamatory meaning." *Id.* For example, although the memo said that the flights were terminated to the satisfaction of the government agencies, it does not preclude the inference that the original provision of the flights was illegal. In other words, a reader of the memo could reasonably conclude that the flights were illegal, but that the investigation ceased once the flights were discontinued. The memo could be read as implying that the provision of free flights was inappropriate and that a conflict of interest existed with respect to the possibility of AOA continuing to provide service during the Clinton administration. In sum, it portrays AOA as participating in some questionable business activities. Thus, at this stage in the proceedings, the Court is unable to rule that these statements were not defamatory as a matter of law.

### C.

■ Thomason also argues that Caudle has failed to allege any actionable republications. In a defamation case, "each publica-

tion of a defamatory statement, including each republication, is a separate tort" and "[i]n some circumstances, the publisher may be responsible for both the publication and republication by another as well." *Ingber v. Ross,* 479 A.2d 1256, 1269 (D.C.1984) (internal quotations omitted). The original publisher will be liable for such a repetition only if "the repetition was reasonably to be expected." *Id.* (quoting RESTATEMENT (SECOND) TORTS § 576).

■ Paragraph 21 of the amended complaint alleges that Thomason "knew, or in the exercise of reasonable care should have known, that such republication would occur." Such allegations unquestionably satisfy the requirement that the republication be reasonably foreseeable. Again, because the Court must accept the allegations of the complaint as true when resolving a motion to dismiss, *see Gregg,* 771 F.2d at 547, there is no basis to dismiss the claims of republication on the grounds that the republications were not reasonably foreseeable.

### III

■ The principal issue at this stage in the proceedings revolves around Thomason's claim that the statements are privileged because they were communicated to officials investigating the travel office. In this regard, he asserts two bases for this privilege: (1) a common interest and (2) a petition to the government for a redress of grievances. A privilege, known as a "common interest" privilege exists in the District of Columbia for statements in which a communicator has a common interest with a listener. *See Moss v. Stockard,* 580 A.2d 1011, 1024 (D.C.1990). A privilege for statements made in connection with a petition for redress of grievances to the government has likewise been recognized. *See Bradley v. Computer Sciences Corp.,* 643 F.2d 1029, 1033 (4th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981). Such a privilege has been viewed as necessary to protect the First Amendment rights of citizens wish to criticize governmental policy, operations, or officials. *See id.*

However, the difficulty Thomason faces is that both of these privileges are "qualified" and not absolute. *See Moss,* 580 A.2d at 1024 (common interest privilege is qualified); *Bradley,* 643 F.2d at 1033 (petition for redress of grievances privilege is qualified). The D.C. Court of Appeals has recognized that such privileges may be defeated by a showing of bad faith: ·

> The privilege [ ] may be defeated by a showing that it was made in bad faith. Once the court determines a statement is subject to the "common interest" privilege, the defendant will be presumed to have been actuated by pure motives in his publication. In order to rebut this presumption, express malice or malice in fact must be shown by the plaintiff.

*Moss,* 580 A.2d at 1024 (internal citations and punctuation omitted). As the *Moss* court explained:

> Malice, in the context of a qualified privilege, is the equivalent of bad faith. It is the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will.

*Id.* at 1025.

Assuming, without deciding, that these privileges are applicable here, in light of the fact that plaintiff has alleged malice, defendant is not entitled to a, dismissal of the complaint. Indeed, plaintiff has alleged bad faith and ill will on the part of defendant with some specificity, and of course, the facts alleged in the complaint must be taken to be true at this stage in the proceedings. If proven at trial, such malice would be sufficient to overcome the privileges. For that reason, the Court is unable to say at this early stage in the proceedings that the plaintiff will be unable to prove any facts upon which he could prevail at trial.

## IV

Thomason argues that Caudle's slander claim, which was added to the amended complaint—and was not included in the original complaint—is time-barred. This new claim was not brought until well over one year after the allegedly slanderous statements were made.[1] Thus, it is barred by the one-year statute of limitations found in D.C.Code § 12–301(4) unless it fits into one of the exceptions to the limitations period.

Plaintiff's original complaint, filed in the U.S. District Court for the Eastern District of Virginia,[2] sought damages for libel based on the publication and dissemination of the White House Press Charters memorandum. The initial complaint makes no reference to any slanderous remarks by Thomason. As indicated, the amended complaint alleges that Thomason made remarks to various White House officials stating that Caudle was involved in paying or providing illegal kickbacks to the White House Travel Office from October 1992 to May 1993.

The claim for slander is not time-barred if it "relates back" the date of the original complaint. Rule 15(c) provides that an amendment of a pleading will relate back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FED. R.CIV.P. 15(c)(2). In applying this rule to claims of defamation, this Court has stated:

> The general practice under Rule 15(c) is to permit relation back so long as the new claim arose out of the defendant's conduct as set forth in the original complaint and the original complaint gave defendant notice sufficient to avoid prejudice.
>
> Courts have repeatedly refused, however, to relate back a defamation claim based on a separate republication where the original complaint did not allege such republication.

*Foretich v. Glamour,* 753 F.Supp. 955, 962 (D.D.C.1990) (internal citations omitted); *see* 6A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1497, at 73–74 (1990). Here, the alleged slander was not referred to in the

---

1. The original complaint was filed December 3, 1993. The amended complaint was filed June 30, 1995.

2. By order of March 21, 1994, the case was transferred by that Court to this Court.

original complaint. There was nothing in that complaint to give notice to Thomason that he would be required to defend against allegations concerning any publication other than that of the White House Press Charters memorandum. *See Construction Interior Sys., Inc. v. Donohoe Co.,* 813 F.Supp. 29, 36–37 (D.D.C.1992); *Foretich,* 753 F.Supp. at 962. Nor are the allegations regarding the slanderous remarks implicit in original complaint. Because the slander claim involves publications entirely distinct from the publication of the memo, and made to a number of individuals not mentioned in the original complaint, the Court finds that the slander claim does not relate back to the filing of the original complaint.

 Alternatively, Caudle argues that under the so-called "discovery rule," his claims were timely filed as of the date of the amended complaint. Under this rule, a claim does not accrue for statute of limitations purposes until the plaintiff "has discovered or reasonably should have discovered all of the essential elements of her possible cause of action, *i.e.,* duty, breach, causation and damages." *Farris v. Compton,* 652 A.2d 49, 54 (D.C.1994) (internal quotations omitted). The District of Columbia Court of Appeals has applied the discovery rule in several circumstances, *see, e.g., id.* at 55 (various tort claims arising out of instances of sexual abuse); *Knight v. Furlow,* 553 A.2d 1232, 1234 (D.C.1989) (legal malpractice); *Burns v. Bell,* 409 A.2d 614, 615–17 (D.C.1979) (medical malpractice); however, it has not yet applied the rule to a defamation claim.

The Court need not decide the novel issue in this jurisdiction of whether the discovery rule applies to defamation causes of action, because even if the Court were to adopt that rule for such cases, it would not be applicable here. Plaintiff claims that he was not aware of the slanderous remarks until the spring of 1995. However, that is plainly incorrect. It is obvious from the filings of plaintiff in the Eastern District of Virginia that he was aware of the alleged slander long before he sought to amend his complaint. In his brief in opposition to defendant's motion to dismiss or transfer filed in that court in March of 1994, Caudle argues that "Defendant began spreading rumors of kickbacks being paid by AOA to the White House Travel Office. The only sources of these rumors were Defendant and Martens." Additionally, plaintiff accused defendant of slander, *inter alia,* in a May 1993 press conference. These statements unquestionably show knowledge of defendant's allegedly slanderous remarks by March 1994—a considerable period of time before the amended complaint was filed—thereby precluding application of the rule. For these reasons, plaintiff's slander claim will be dismissed.

V

For the above-mentioned reasons the Court will deny defendant's motion to dismiss with respect to the libel claim and grant the motion with respect to the slander claim. An Order consistent with the foregoing is being issued contemporaneously herewith.

*ORDER*

For the reasons set forth in the Memorandum accompanying this Order, it is this 25th day of April, 1996,

ORDERED that defendant's Motion to Dismiss is GRANTED with respect to Count II of the amended complaint (slander) and DENIED with respect to Count I of the amended complaint (libel); and it is

FURTHER ORDERED that Count II of the amended complaint (slander) be and it is hereby DISMISSED; and it is

FURTHER ORDERED that plaintiff's Motion to Lift Stay on Discovery be and it is hereby GRANTED; and it is

FURTHER ORDERED that plaintiff's Motion to Set Oral Argument on Motion to Dismiss be and it is hereby DENIED; and it is

FURTHER ORDERED that plaintiff's Motion for Scheduling Conference be and it is hereby GRANTED; and it is

FURTHER ORDERED that a status call and scheduling conference be and it is hereby scheduled for May 14, 1996, at 10 a.m.