419 F.Supp. 85 (1976)
The UNITED STATES of America, Plaintiff,
v.
MANSION HOUSE CENTER NORTH REDEVELOPMENT COMPANY, a limited partnership, et al., Defendants.
No. 76-20C(4)
United States District Court, E. D. Missouri, E. D.
September 8, 1976.
Barry H. Short, U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., for plaintiff.
Gary S. Heifetz, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon plaintiff's motion for appointment of a receiver pendente lite. Pursuant to an order of this Court, the parties have stipulated to certain matters involved in plaintiff's motion. Plaintiff brought this action as mortgagee of an apartment and motor hotel complex, consisting of three buildings owned by defendant-mortgagors, seeking a variety of relief to protect its interests therein.
From the documents presented with the pleadings, and the stipulations of the parties in connection with the present motion, the following relevant facts appear:
1) From the date of the original three deeds of trusts to June 1, 1976, there has been an increase in liability for principal and interest in the amount of $6,806,529.77.
2) Defendants submitted to the Department of Housing and Urban Development a Report on Examination of Financial Statements of the three mortgagors for the year ending December 31, 1975. This report was prepared by Coopers & Lybrand, C.P.A. and concludes:

*86 As shown by the accompanying financial statements, at December 31, 1975, current liabilities exceeded current assets by $562,709, and it appears that current operations may not provide the funds needed to liquidate obligations on a current basis.
3) Although defendant-mortgagors are required by the deeds of trust to "pay all ground rents, taxes, assessments, water rates, and other governmental or municipal charges . . .", defendants are grossly deficient in these payments. Taking the facts most favorable to defendants, the Federal Housing Administration Commissioner made deficiency payments for real estate taxes in 1975 in the amount of $274,233.65.
4) Despite a provision in an agreement between the parties herein which provides:
Owners shall not without the prior written approval of the Commissioner:
. . . . .
(d) Remodel, add to, reconstruct or demolish any part of the mortgaged property . . .
defendants paid for the remodeling of the Alumni Club Building and the Salem Cafeteria & Bar, at a total cost of $53,870.61, without seeking the prior approval of the Commissioner.
5) The three mortgagors entered into Management Agreements with Remsco Management, Inc. which provided in part:
It is expressly understood and agreed by and between the parties hereto that the Secretary shall have the right to terminate this Agreement at the end of any calendar month, with or without cause, on thirty (30) days advance written notice to each of the parties, except that in the event of a default by the owner under the obligation of the project mortgage and Regulatory Agreement, the Secretary may terminate this Agreement immediately upon the issuance of a notice of cancellation to each of the parties.
The Secretary exercised this right on July 1, 1975, as to each of the Management Agreements then in effect, by notifying all parties concerned that the Agreements would be terminated as of July 31, 1975. Despite this, the mortgagors continued to pay management fees to Remsco Management, Inc. from August 1, 1975 through June 30, 1976 at a total cost of $126,834.83.
6) The agreements between the parties provide in part that:
Owners shall not without the prior written approval of the Commissioner:
. . . . .
(b) Assign, transfer, dispose of, or encumber any personal property of the project, including rents, or pay out any funds except from "surplus cash", except for reasonable operating expenses and necessary repairs. . . .
7) At the direction of defendant Frank, $15,000 was paid to Norman S. London, Attorney. This payment was shared equally by each of the three projects. The payment was recorded as a "Retainer Fee". Defendant mortgagors have failed and refused to inform plaintiff in what manner the payment was for the reasonable operating expenses of the projects.
8) The mortgagors have paid various sums of money to the Mansion House Motor Hotel Company in connection with architect's fees and construction costs, incurred in connection with the conversion of the South Tower into a motor hotel. The mortgagors contend that these construction costs would have been necessary to put the South Tower into good condition for occupancy by apartment tenants, had the South Tower continued as an apartment building. Plaintiff has demanded repayment of these funds.
9) The lease between the Mansion House Motor Hotel Company and the Mansion House Center South Redevelopment Company requires the Hotel to pay ground rent on the South Project to the General Electric Pension Trust. The South Redevelopment Company has never required the Hotel to make timely payments of the ground rent; instead the South Redevelopment Company has made the monthly payments and was later reimbursed by the Hotel.
*87 An evidentiary hearing on a motion to appoint a receiver pendente lite is not required where the record discloses sufficient facts to warrant appointment of a receiver. Bookout v. Atlas Financial Corporation, 395 F.Supp. 1338 (N.D.Ga.1974), aff'd, 514 F.2d 757 (5th Cir. 1975); Haase v. Chapman, 308 F.Supp. 399 (W.D.Mo.1969).
In United States v. Thompson, 272 F.Supp. 774 (E.D.Ark.1967), aff'd, 408 F.2d 1075 (8th Cir. 1969), the court held that the term "operating expenses" was to be construed
with at least reasonable strictness and . . . should be limited to expenses paid or incurred in connection with the actual operation . . . Capital expenditures should be excluded, . . . and . . . there should be excluded also expenses paid or incurred in connection with readying the project for operation. Id. at 787.
It is the Court's conclusion, therefore, that the sums expended in converting the South Tower into a motor hotel can not be construed to be operating expenses as these costs were "incurred in connection with readying the project for operation". Defendants argue that these costs were cost overruns and that none of the documents between the parties specifies who is to bear these overruns. Defendants ignore, however, the plain language of the agreements between the parties that such expenditures could not be paid without the prior written approval of the Commissioner.
The Thompson court also held that attorney's fees may be considered operating expenses only under certain conditions. Expenses incurred in connection with collecting rent, evicting tenants or defending lawsuits "growing out of the operation of the project" were considered to be operating expenses. Id. at 787. The mortgagors herein have refused to reveal the nature of the legal services performed and the Court can not help but draw an adverse inference therefrom.
The expenses in the remodeling of the Alumni Club Building and the Salem Cafeteria & Bar were incurred without the prior approval of the Commissioner and therefore, were incurred in a clear violation of the agreements between the parties.
The stipulations and documents clearly show that plaintiff's financial obligation is increasing and that assets appear insufficient to cover liabilities. Defendants have failed to make payments when due, or to demand payments when due from defendants' debtors. Defendants have incurred expenses without approval for items which the agreements between the parties specifically required prior approval. Defendants have continued to pay fees to a managing agent after plaintiff, with full right and authority, terminated that relationship. Under these circumstances, the Court concludes that appointment of a receiver is warranted. Bookout v. Atlas Financial Corporation, supra; Haase v. Chapman, supra; Cf., Wickes v. Belgian American Educational Foundation, 266 F.Supp. 38 (S.D.N. Y.1967).
Accordingly, plaintiff's motion will be granted.