UNITED STATES of America, Plaintiff,

v.

ST. PAUL MISSIONARY PUBLIC
HOUSING, INC., Defendant.

No. C 82–652.

United States District Court,
N.D. Ohio, W.D.

Oct. 4, 1983.

James D. Jensen, Asst. U.S. Atty., Tole-
do, Ohio, for plaintiff.

William H. White, Lima, Ohio, for de-
fendant.

## MEMORANDUM AND ORDER

DON J. YOUNG, Senior District Judge:

This cause is before the Court on a mo-
tion by plaintiff, Secretary of Housing and
Urban Development (HUD), to be placed as
mortgagee in possession of property in-
volved in a pending mortgage foreclosure
proceeding. The defendant objects to the
extraordinary relief sought in this motion
and seeks to remain in possession during
the pendency of the foreclosure proceeding.
Prior to addressing the cause presently be-
fore the Court, a brief history of pertinent
events is in order.

The subject matter of the cause *sub judi-
ce* is a housing project, denominated vari-
ously as Lima Townhouses or St. Paul Ter-
race Apartments. The project was devel-
oped by defendant, St. Paul Missionary
Public Housing, Inc., a non-profit corpora-
tion, to provide reasonable accommodations
for the elderly and for low-income families.

To finance the project, on August 17,
1971, defendant executed the original note,
secured by a mortgage in favor of The
Galbreath Mortgage Company for $1,002,-
500.00. Subsequently, in May, 1974, de-
fendant executed two additional secured
notes and mortgages in the amounts of
$17,400.00 and $11,200.00. These mortgag-
es ultimately were assigned to the Secre-
tary of Housing and Urban Development in
November, 1976. Exhibits I & O, Plain-
tiff's Amended ·Complaint, May 18, 1983.
Plaintiff HUD filed a foreclosure action on
October 14, 1982, alleging that St. Paul
Missionary has failed to pay certain month-
ly installments and has not made subse-
quent payments sufficient to restore the
loan to currency. Plaintiff's Amended

Complaint, paragraphs 10 and 14. Plaintiff seeks, *inter alia*, foreclosure on the mortgage instruments securing the notes and, as provisional relief, immediate possession with the right to collect the rents and to operate the project *pendente lite.*[1] It is upon the motion for immediate possession that the Court must presently decide.

■ Plaintiff submits and this Court acknowledges that federal law controls placement of the Secretary of HUD as mortgagee in possession. *United States v. Scholnick*, 606 F.2d 160 (6th Cir.1979). *See also United States v. Helz*, 314 F.2d 301, 303 (6th Cir.1963) (federal law controls "cases affecting government money and the credit of the government"); *United States v. Manhattan Development Co.*, No. C77–517 (N.D.Ohio April 24, 1979) (28 U.S.C. § 1345 authorizes the Secretary of HUD to foreclose on a mortgage guaranteed by the Secretary and proceedings brought by the United States pursuant to statute are controlled by federal, not state, law).

■ Placing a mortgagee in possession *pendente lite* to collect the rents, issues, and profits generated by the property is an equitable remedy. *Viewcrest Garden Apartments, Inc. v. United States*, 281 F.2d 844, 849 (9th Cir.), *cert. denied*, 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960). As such, it has been held appropriate when justice is served and "the rights of the parties interested in the property will be best secured by such action." *Id.* The Ninth Circuit further determined that once it was found appropriate to utilize this remedy, and particularly where additional factors appeared, it might be "sensible administration to give the [mortgagee in possession] the additional power to manage the property." *Id.* The court specified that the additional factors could be "any circumstance which commends itself to a court of equity as a reason for granting the relief sought." *Id.*

■ The Ninth Circuit promulgated two factors, the existence of which permits a district court to place the mortgagee in possession. The first is present when the security is inadequate, or its adequacy is substantially doubtful. The second is satisfied if the mortgagor is insolvent or of doubtful financial standing. 281 F.2d at 847–48. *See also United States v. Mountain Village Co.*, 424 F.Supp. 822 (D.Mass. 1976). This Court, in *United States v. Manhattan Development Co.*, No. C77–517, slip op. at 2, (N.D.Ohio April 24, 1979), considered, in addition to the above criteria, a showing of the likelihood of plaintiff's success on the merits in the foreclosure action. *See also Bookout v. First National Manufacturing and Distribution Co.*, 514 F.2d 757, 758 (5th Cir.1975) (the court observed that the probable success on the merits was one factor to be considered in the appointment of a receiver *pendente lite*).

■ Plaintiff alleges, by verified complaint, that the present fair market value of Lima Townhouses is less than the outstanding indebtedness. Plaintiff's Amended Complaint, paragraph 18, May 18, 1983. Defendant's Amended Answer specifically denies this allegation. However, no proof to the contrary is offered in defendant's memorandum opposing the motion presently before the Court. The Court, therefore, relies on plaintiff's verified statement that Lima Townhouses is inadequate security for the outstanding debt.

1. Alternative relief sought by plaintiff is for the appointment of a receiver to exercise the requested rights *pendente lite*. Plaintiff directs this Court's attention to *United States v. Exchange National Bank*, No. 76–C–2096, slip op. at 10 (N.D.Ill. Feb. 10, 1977), which states that "the duties of a mortgagee in possession and a receiver to operate and collect rents are identical." Since the duties of a mortgagee in possession and a receiver are the functional equivalent, this Court, when speaking of plaintiff's request to be placed as mortgagee in possession, will hereinafter also be considering its alternative request for the appointment of a receiver.

The Court also determines that, for the financial considerations detailed in this memorandum and order and because defendant offers no suggestion that one form of relief is preferable over the other, the preliminary relief ordered will be that of plaintiff's immediate possession of the subject housing project pending the foreclosure litigation.

Upon consideration of the second factor necessary for the appointment of a mortgagee in possession, *see Viewcrest Apartments*, 281 F.2d at 847–48, the Court also is convinced that plaintiff has made a sufficient factual showing to support its allegation that defendant is in financial difficulty. This conclusion is reached notwithstanding the contention that the project's financial losses are attributable to plaintiff's acts (or omission to act, as the case may be).

In addition to the verified statement alleging that defendant defaulted on two mortgage payments due and owing in 1976, plaintiff has provided the Court with exhibits and affidavits which evidence that: 1) no mortgage payment has been submitted by Lima Townhouses since January, 1982; 2) the Lima Townhouse project, from January, 1983, to the present, has continually defaulted on its payment to the Ohio Power Company, resulting in threatened termination of electric services; and 3) as of November 30, 1982, the owner of Lima Townhouses (St. Paul Missionary Public Housing) owed delinquent amounts to the Secretary of HUD totaling $373,509.27. The Court has found relevant authority to establish such defaults as indicative of financial instability. As explained by the district court for the Northern District of Illinois, the defendant's "long-standing defaults on ... mortgage payments ... exhibit serious fiscal problems." *United States v. Winthrop Towers*, 542 F.Supp. 1042, 1044 (N.D.Ill.1982).

In seeking to determine the likelihood of plaintiff's success on the merits in the foreclosure action, the third requisite to placing mortgagee in possession *pendente lite, see Manhattan Development*, No. C77–517, slip op. at 2, the Court must first address the allegations in defendant's Memorandum in Opposition to the motion before the Court. The gravamen of defendant's contentions is that "but for" plaintiff's failure to pay Lima Townhouses monies allegedly owing on a Section 8 subsidy program, the mortgage payments would be made. Defendant further contends that this subsidy "is a necessity for the running of the facility due to the fact that the rents are quite low and do not cover the full expenses of operation ... and plaintiff has been aware of this fact." Defendant's Memorandum in Opposition, at 1.

Putting aside for the moment the issue of whether Lima Townhouses is, indeed, owed the Section 8 subsidy, the Court first addresses defendant's bald assertion that receipt of Section 8 monies would have averted default. The figures presently before the Court simply do not justify this conclusion. According to HUD's Office of Finance and Accounting, defendant owed a delinquent amount (including, among other things, overdue interest and service charges) totaling $373,509.27 as of November 30, 1982. Motion of Plaintiff to Supplement its Motion for Mortgagee in Possession, Affidavit of Brooks, paragraph 3. Defendant claims that Section 8 monies amounting to $150,000.00 is owed them as of a similar period. Defendant's Amended Answer, paragraph 27. According to the Court's calculations based on these figures, Section 8 funds alone would not have made up the deficit.

As to whether defendant truly is owed the government subsidy, this Court cannot surmise given the current state of the record and lack of proferred legal authority. In support of its contention, defendant has produced a litany of correspondence cataloguing its efforts for recognition from plaintiff of its Board of Directors and its efforts to obtain the Section 8 funding. While the Court sympathizes with defendant's apparent "continual battle" with plaintiff regarding the abovementioned disputes (Defendant's Memorandum in Opposition, at 2), these matters appear to be more properly presented as defenses to the actual foreclosure litigation or as counterclaims herein. Unfortunately, the materials provided the Court by defendant do not negate plaintiff's factual showing that: 1) there has been a default; 2) that the project has a fair market value below that of the outstanding debt; and 3) that mortgagor is presently of doubtful financial standing. *See Viewcrest Apartments*, 281 F.2d at 847–48. *See also Mountain Vil-*

*lage,* 424 F.Supp. at 828; *Manhattan Development,* No. C77–517, slip op. at 2. Nor does defendant provide the Court with any authority to indicate that plaintiff's eventual success on the merits is in question.[2]

Plaintiff, on the other hand, directs this Court's attention to the Sixth Circuit Court of Appeals' decision in *Federal Property Management Corp. v. Harris,* 603 F.2d 1226 (6th Cir.1979). The plaintiffs in the action, owners of low and moderate income housing projects, sought a declaratory judgment that the decision by the Secretary of HUD to set off rent supplement payments owed to the owners against their delinquent mortgages was "without basis in law and calculated to deprive plaintiff [project owners] of the ability to manage their projects in keeping with 'sound management procedures'." *Id.* at 1227–28. The Sixth Circuit first analyzed Congress's intent and goals in enacting the national housing acts. It determined that Congress authorized HUD to enter into rent supplement contracts to encourage the development of low and moderate income housing. *Id.* at 1229. It then concluded that HUD was not under

> an obligation to fund, under all circumstances, housing programs that might, over any short range, assist qualified tenants. [The district court] holding does not take into account the long range problems HUD faces. The housing acts do not obligate the Secretary to guarantee that all federally funded housing projects will be continually maintained. HUD must use available funds to achieve the ultimate goal of a decent home for every American family and cannot focus exclusively on a few projects.

*Id.* at 1230 (citations omitted). *See also Winthrop Towers,* 542 F.Supp. at 1045 ("HUD was well within its discretion in denying the subsidies on the basis of defendant's poor fiscal performance");

*Weems v. Pierce,* 534 F.Supp. 740, 745 (C.D.Ill.1982) ("the court does not find an obligation in the statutes ... to provide ... rental assistance to each and every 'low-income housing project'"). From the foregoing authority, it would appear that defendant cannot claim an absolute right to federally funded subsidy payments.

The Sixth Circuit then upheld the Secretary's decision, stating:

> If the plaintiff [project owners] are correct in their assertion that they cannot meet their current obligations and make mortgage payments on the rentals they receive, it is obvious these projects can never become economically feasible. Thus, long range national housing goals would be advanced by terminating these projects so that the money could be used elsewhere to encourage private enterprise to create and operate low and moderate income housing projects.

603 F.2d at 1230. It appears, in the case now before the Court, that defendant has continued to collect rents from the tenants at Lima Townhouses, (Motion of Plaintiff to Place Mortgagee in Possession, Affidavit of Jennings, paragraph 3), but has been unable to "meet [its] current obligations and make mortgage payments on the rentals they receive." 603 F.2d at 1230. The Sixth Circuit's position, as delineated in *Harris,* allows this Court reasonably to infer that plaintiff will ultimately prevail on the merits.

Plaintiff additionally submits that, notwithstanding its showing of supporting factual basis upon which relief may be granted, the motion in the cause *sub judice* should be granted in accordance with the terms of the mortgage provision alone. Plaintiff's Motion to Place Mortgagee in Possession, at 5. *See United States v. Mountain Village Co.,* 424 F.Supp. 822 (D.Mass.1976) (the court held that the mortgage provision alone justified appointing a

---

**2.** Defendant submits a further contention that placing plaintiff HUD in possession pending the foreclosure litigation will jeopardize current negotiations between HUD and a possible purchaser of Lima Townhouses. Defendant's Supplemental Memorandum in Opposition, at 1. Not-

withstanding the unsupported and undocumented statement that a sale of the project is imminent, this Court fails to see how placing HUD in possession would jeopardize HUD's negotiations with a potential buyer.

receiver upon default). The pertinent provision is found in paragraph 5 of the mortgage deed and states:

> 5. That upon default hereunder Mortgagee shall be entitled to the appointment of a receiver by any court having jurisdiction, without notice, to take possession and protect the property described herein and operate same and collect the rents, profits and income therefrom;

In *United States v. Manhattan Development Co.*, No. C77–517 (N.D.Ohio April 24, 1979), this Court considered an identical argument. In granting plaintiff HUD immediate possession of the property pending the foreclosure action, this Court found it unnecessary to decide the issue on the basis of the mortgage language. The Memorandum and Order states:

> This Court, in this instance, need not apply such a standard.... While great weight must be given to the documents involved, ... here there is in addition a sufficient factual showing by the plaintiff that it will succeed on the merits, that there has been a default, and that the present financial make-up of [defendant] is such as to warrant the appointment of a receiver and to grant the plaintiff immediate possession of the property during the pendency of this action.

*Id.* at 3. The Court today reiterates its conclusion in *Manhattan Development.* There is a sufficient factual showing in the cause *sub judice* to place mortgagee in possession without deciding upon the alternate standard suggested by plaintiff.

THEREFORE, for the reasons stated, good cause therefor appearing, it is

ORDERED, ADJUDGED AND DECREED by the Court:

FIRST: The plaintiff is granted immediate possession of all the mortgaged property, real, personal and mixed, including the bank accounts associated with or derived in any way from the mortgaged property, tenant's security deposits, and all property of the mortgagor of any nature in, on, connected with or used in the operation of the mortgaged property, to hold, preserve and manage the same until the further order of this Court.

SECOND: The above-named defendant and each of its agents and employees shall turn over to the plaintiff or its authorized representative all of the property which the plaintiff is entitled to reduce the possession under paragraph FIRST of this order; and the defendant and each of its agents and employees are enjoined from interfering in any way with the mortgaged property or with plaintiff in the possession, preservation and management of the mortgaged property during the pendency of this foreclosure proceeding.

THIRD: The plaintiff shall receive all rents and profits accrued or accruing from the mortgaged property.

FOURTH: The plaintiff is authorized to negotiate a management contract for management of the mortgaged property, and to employ, discharge, and fix the compensation for all agents and employees according to the necessities of the management of the mortgaged property.

FIFTH: The plaintiff shall pay the real property taxes on the mortgaged property.

SIXTH: The plaintiff shall make and file with this Court, within sixty days of this order, a full inventory showing the extent and condition of the mortgaged property in its possession.

SEVENTH: The plaintiff shall file detailed reports of receipts and disbursements and of all transactions entered into in connection with its possession, preservation and management of the mortgaged property. The first such report shall be filed ninety days after entry of this order, and such reports shall be filed at three month intervals thereafter, and at the conclusion of this proceeding.

EIGHTH: No less frequently than quarterly, coincident with the dates of the quarterly reports required by the preceding paragraph, plaintiff will apply to the sums due or falling due under the mortgage all net receipts exceeding the equivalent of

one month's gross income from the property.

IT IS SO ORDERED.