**UNITED STATES of America, Plaintiff,**

v.

**BERK & BERK, Defendant and Third–Party Plaintiff,**

v.

**YORK ASSOCIATES, INC., Third–Party Defendant.**

Civ. A. No. 89–4577 (JCL).

United States District Court, D. New Jersey.

May 2, 1991.

E. Kathleen Shahan, Washington, D.C., for plaintiff.

A. Dennis Terrell, New Vernon, N.J., for Berk & Berk.

Leonard J. Bucki, Philadelphia, Pa., for York Assoc., Inc.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

The United States of America moves for partial summary judgment on its claim for the appointment of a receiver. In addition, the United States moves to dismiss defendant's counterclaims and to strike its jury demand. Third–Party Defendant, York Associates, Inc. ("York"), moves to dismiss the third-party complaint. Defendant Berk & Berk ("Berk") opposes the motions. The court will address all motions on the papers pursuant to *Fed.R.Civ.P.* 78.

### BACKGROUND

In 1985, Berk purchased Hunters Glen Apartments, an apartment project, with funds loaned by DRG Funding Corporation ("DRG"). The loan was coinsured against nonpayment by the United States Department of Housing and Urban Development ("HUD") pursuant to the National Housing Act, 12 U.S.C. §§ 1713, 1715n(f) and 1715z–9. Where the loans are co-insured, the Government National Mortgage Association ("GNMA") has specific authority to purchase, service and sell mortgages in its own name. DRG was responsible for servicing the loan, and for supervising the rehabilitation of the project. To obtain co-insurance from HUD, Berk executed a regulatory agreement with DRG in which Berk agreed to comply with detailed requirements concerning, *inter alia,* the financial and physical management of the project and the use of project income. *See* HUD Appendix 18, 20–30.

In September of 1988, GNMA removed DRG as the servicer of the loan "for cause", and appointed third-party defendant York Associates, Inc. ("York") to service the loan. *See* Appendix 42. GNMA acquired DRG's interest in the mortgage and note by assignment, which was promptly recorded. *See* Appendix 50. DRG also assigned its interest in the regulatory agreement to GNMA. *See* Appendix 39, 54.

Berk made its last full mortgage payment in January of 1989. Berk made a partial payment of $65,585 in March of

1989. No further payments have been made to date. Upon Berk's failure to pay full mortgage payments for four months, GNMA instituted this foreclosure action in November of 1989. On May 11, 1990, GNMA assigned its interest in the mortgage and regulatory agreement to HUD. *See* Exhibit D, Appendix 39–41. HUD made a partial insurance payment to GNMA of $27,658,000.

HUD, as assignee of the mortgage agreement and the regulatory agreement, moves to foreclose based upon Berk's default. In its answer, Berk raises numerous defenses to foreclosure and asserts counterclaims against HUD based upon HUD's alleged liability for actions taken by York.

## I. PARTIAL SUMMARY JUDGMENT

To prevail on a motion for summary judgment, the moving party must demonstrate the absence of an issue of material fact and its entitlement to judgment as a matter of law. *Fed.R.Civ.Pro* 56(c). This burden may be "discharged by showing ... that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court must view the facts and inferences therefrom in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

The appointment of a receiver in this foreclosure action is governed by federal law. *View Crest Garden Apartments, Inc. v. United States*, 281 F.2d 844 (9th Cir.), *cert. denied*, 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960); *United States v. Chester Park Apartments, Inc.*, 332 F.2d 1, 4 (8th Cir.), *cert. denied*, 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176 (1964); *United States v. St. Paul Missionary Public Housing, Inc.*, 575 F.Supp. 867, 868 (N.D.Ohio 1983). A district court, in its discretion, may appoint a receiver to collect rents and profits and manage the property during the pendency of a foreclosure proceeding. *View Crest*, 281 F.2d at 847–48. No hearing is necessary where the facts support the appointment of a receiver. *United States v. Mansion House Center North Redevelopment Co.*, 419 F.Supp. 85, 87 (E.D.Mo.1976). Factors that the court may consider include: the property is inadequate security for the loan; the mortgage contract contains a clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; the probability that foreclosure will be delayed in the future; the unstable financial status of the mortgagor; the misuse of project funds by the mortgagor; and furthering the policy of the National Housing Act. *Id.; United States v. American National Bank & Trust Co.*, 573 F.Supp. 1317, 1318 (N.D.Ill. 1983); *United States v. Queens Court Apartments, Inc.*, 296 F.2d 534, 539–40 (9th Cir.1961); *Gardon Homes, Inc. v. United States*, 207 F.2d 459, 460 (1st Cir. 1953); *United States v. Mountain Village Co.*, 424 F.Supp. 822 (D.Mass.1976); *United States v. Chester Park Apartments Inc.*, 332 F.2d 1, 5 (8th Cir.), *cert. denied*, 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176 (1964); *Mansion House Center*, 419 F.Supp. at 87; *St. Paul Missionary*, 575 F.Supp. at 869. The appointment of a receiver serves the policy of the National Housing Act by protecting the treasury and the government's investment, which in turn promotes the policy of funding lower income housing. *American National Bank*, 573 F.Supp. at 1318; *View Crest*, 281 F.2d at 848; *Queens Court Apartments*, 296 F.2d at 540.

HUD states that it is entitled to judgment as a matter of law, since it has a contractual right to the appointment of a receiver, and the appointment of a receiver is warranted on equitable grounds. The mortgage contains a clause which affords HUD the absolute right to the appointment of a receiver and the waiver by the owner of all defenses to receivership. *See* Appendix 16 at ¶ 11. In addition, HUD states that Berk has conceded that it has used project funds to litigate this case, in violation of the regulatory agreement. *See* Appendix 23, ¶ B.3.b. Harvey Berk, the principal of Berk, admitted that he was informed by his counsel that such use of the funds violated the agreement, but states

that only a portion of the funds was spent improperly. *See* affidavit of Harvey Berk at ¶¶ 34 and 35. Holly Larisch, asset manager for Ervin and Associates, the current mortgage servicer, states that Harvey Berk informed her that he would continue to use mortgage funds to litigate the case until ordered to stop by a court. *See* Declaration of Larisch, Appendix 60 at ¶ 10. Berk has subsequently repaid a portion of those funds, but over $200,000 of project funds spent on legal expenses remains unreimbursed. *See* Appendix 59 ¶ 7.

In addition, HUD argues that a receiver is warranted because Berk is voluntarily in arrears in its payments. Berk's operating expenses for June and August of 1990 show a surplus of approximately $1,100,-000. *See* Appendix 84–87 and 89–91. HUD notes that this amount would be sufficient to pay three full mortgage payments. HUD also notes that Berk intends to resist foreclosure, making a prompt resolution unlikely. Finally, HUD asserts that Berk has suffered a net operating loss, leading to a high probability of its insolvency, with no personal liability on the partners of Berk, thus leaving HUD with no recourse for deficiencies after foreclosure.

In opposition, Berk makes six arguments: 1) the appointment of a receiver is a drastic remedy; 2) the legal expenditures are "reasonable operating expenses"; 3) unresolved issues of material fact preclude summary judgment; 4) HUD failed to comply with its own policy by "refusing" to continue with the workout plan; 5) its default is in question, since York, not Berk, created the default by its refusal to pay the mortgage out of escrow funds; and 6) Berk is entitled to set off against the mortgage debt funds it expended to operate the project.

■ *1. The appointment of a receiver.* Berk argues that the appointment of a receiver is a drastic remedy, citing *Mintzer v. Arthur L Wright Co.,* 263 F.2d 823, 824 (3d Cir.1959). Berk's reliance on *Mintzer* is misplaced, as it dealt with state receivership law. As noted *supra,* federal law governs the appointment of a receiver in an action by HUD to foreclose. Under Federal law, the appointment of a receiver is not a drastic remedy. *See supra* at p. 597.

■ *2. The legal expenses.* Berk argues that its use of project funds for legal fees is a reasonable operating expense, citing *In re Garden Manor Assoc.,* 70 B.R. 477 (N.D.Cal.1987). *Garden Manor* merely states that legal fees expended to collect rents is a reasonable operating expense, citing *Thompson.* Legal expenses may be reasonable and necessary to the operation of the project within the meaning of the regulatory agreement in this action, if they are expended to collect rent, evict tenants, or defend lawsuits "growing out of the operation of the project". *Mansion House,* 419 F.Supp. at 87; *United States v. Thompson,* 272 F.Supp. 774, 787 (E.D.Ark. 1967), *aff'd,* 408 F.2d 1075 (8th Cir.1969). *Thompson* holds that expenses which benefit the owner, not the project, are not permissible expenses. Funds expended on legal fees to defend a foreclosure action do not constitute expenses relating to the operation of the project. *In re EES Lambert Assoc.,* 63 B.R. 174 (N.D.Ill.1986). It is undisputed that Berk employed project funds for legal expenses to litigate this foreclosure action. *See* Berk affidavit at ¶ 36. Berk attempts to minimize its fault by stating that it returned a portion of the funds upon being informed that such use of the funds did not constitute a project expense. However, it is undisputed that Berk has not repaid funds used to repay operating costs personally advanced by Harvey Berk, Berk's principal. *See* Berk affidavit at ¶¶ 34 and 35. The court concludes that Berk used project funds for the benefit of the owner, not the project, in violation of the regulatory agreement and *Thompson.*

■ *3. Unresolved issues of material fact.* Berk argues that unresolved issues of fact exist which preclude summary judgment. Berk fails to point to any material issue of fact which would preclude the appointment of a receiver. While Berk attempts to point to an issue of fact concerning its claims against York and HUD, such

claims do not preclude the appointment of a receiver during the pendency of the foreclosure proceeding. *St. Paul Missionary,* 575 F.Supp. at 869.

■ *4. Workout policy.* Berk argues that HUD failed to comply with its own policy to enter into workout agreements whenever possible. Assuming *arguendo* that HUD has such a policy, HUD is not obligated to accept or even consider a workout plan. *United States v. Beacon Terrace Mutual Homes, Inc.,* 594 F.Supp. 53, 58 (D.Md.1984); *United States v. Victory Highway Village, Inc.,* 662 F.2d 488, 497 (8th Cir.1981); *United States v. American National Bank & Trust Co.,* 595 F.Supp. 324 (N.D.Ill.1983), *aff'd without opinion,* 727 F.2d 1112 (7th Cir.1984) (rejected defense that HUD failed to pursue workout or other alternatives to foreclosure). In any event, as noted *supra,* any claims Berk may have against HUD and York do not preclude the appointment of a receiver.

*5. Default.* Berk's argument that it is not in default is frivolous. Berk argues that there is a question whether Berk can be considered to be in default, since it alleges that the default was caused by York's refusal to pay the mortgage charges out of the escrow funds. Berk asserts that York agreed to make mortgage payments out of escrow funds, and that HUD "acquiesced" in such payment. Contrary to Berk's assertions, the record shows that York agreed to pay the January 1989 mortgage payment out of escrow funds, but specifically informed Berk that it would only do so for that month. *See* Appendix 58, 62. A similar argument that HUD waived a default by accepting funds under a workout agreement was rejected in *United States v. Gregory Park, Section II Inc.,* 373 F.Supp. 317, 349 (D.N.J.1974). Moreover, neither York nor HUD have a duty to pay the mortgage out of the escrow funds. *Id.* at 345; *Queens Court Apartments,* 296 F.2d at 538. In *Queens Court,* the court rejected the argument that the government was required to use replacement funds for delinquent payments or credit the mortgagor with such funds. In-

stead, the court held that the government had the right to hold the replacement funds as a set-off against any possible amount due after a foreclosure sale. *Id.* at 538.

It is undisputed that Berk has not made a full mortgage payment since January of 1989. The amount necessary to bring the mortgage current to November 1, 1990 is $6,406,716.60. *See* Appendix 2–3. There is no dispute that Berk unilaterally decided to withhold the mortgage payments to "set off" money allegedly owed to Berk. *See* Berk affidavit at ¶¶ 34–36. Finally, even if HUD paid the delinquent mortgage charges out of the escrow fund, the delinquency would be almost 5 million dollars ($6,406,716.60 [amount due]—$1,700,000.00 [Berk's claimed set-off] ). Berk's assertion that it is not in default is without basis in fact or law.

■ *6. Set-off.* Berk concedes that it unilaterally stopped making payments under the mortgage in order to "set off" $1,700,000 in operating costs allegedly owed to Berk. *See* Berk affidavit at ¶ 36. The principal of Berk, Harvey Berk, alleges that he used his personal funds to enable the project to continue, due to understatements and other erroneous projections made by DRG. Berk appears to argue that its voluntary payment of this sum to continue the viability of the project excuses it from its obligations under the mortgage, although this excuse is not expressly stated anywhere in the relevant documents. As noted *supra,* it is undisputed that Berk has not made a full mortgage payment since January of 1989. The fact that Berk may or may not have a defense against foreclosure or a claim for equitable recoupment does not preclude the appointment of a receiver during the pendency of the foreclosure proceeding. *See St. Paul Missionary,* 575 F.Supp. at 869.

The court finds that the appointment of a receiver is warranted for the following reasons: Berk has misused project funds to pay for legal expenses; there is a substantial likelihood that foreclosure will be delayed due to Berk's intention to oppose it; HUD has a contractual right to the appointment of a receiver; and Berk has re-

fused to pay the mortgage despite the availability of funds to do so in 1990. The court will grant partial summary judgment on HUD's claim for the appointment of a receiver to operate the Hunters Glen Apartment Project during the pendency of the foreclosure proceeding.

## II. HUD's MOTION TO DISMISS COUNTERCLAIM AND TO STRIKE BERK's JURY DEMAND

### A. COUNTERCLAIM

#### 1. Sovereign Immunity

HUD moves to dismiss Berk's counterclaim pursuant to *Fed.R.Civ.P.* 12(b), asserting that the counterclaim fails to state a claim upon which relief can be granted and that the court lacks subject matter jurisdiction. HUD argues that Berk's claims are beyond the statutory jurisdiction of the court, that the claims are barred by sovereign immunity, and that Berk has failed to file an administrative claim. Berk contends that the "sue and be sued" language of the National Housing Act acts as a waiver of sovereign immunity, and that HUD waived its immunity when it filed suit.

The first count of the counterclaim is based upon Berk's business dealings with DRG (the original lender), which Berk alleges induced it to execute the mortgage and note. Berk asks the court to reform the mortgage on the property based upon "mutual mistakes" of Berk and DRG. Berk also requests an immediate turnover of all funds held by HUD or its agents.

In the second count of the counterclaim, Berk asserts that it will be irreparably harmed unless HUD is enjoined from proceeding with the foreclosure action. Berk requests that HUD be permanently enjoined from proceeding with this action.

In the third count of the counterclaim, Berk states that the conduct of HUD and its agents entitles it to equitable recoupment barring the foreclosure action. Berk requests that HUD be enjoined from proceeding with the foreclosure action, and rescind the notice of default and acceleration of the loan.

In the fourth count, Berk asserts that HUD precluded Berk from restructuring the project by "destroying" its tax exempt status. Berk also alleges that HUD failed to assume responsibility for the financial status of the project when York refused to release Berk's escrow funds. Berk also complains that HUD committed waste by refusing to consider a workout proposal. Berk requests general, compensatory and punitive damages from HUD and its agents, an order directing HUD to enter into a mortgage workout with Berk, and that HUD be enjoined from proceeding with the foreclosure action.

■■■ The United States may not be sued without its consent. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). The United States does not waive sovereign immunity merely by filing suit. *United States v. Shaw,* 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); *Gregory Park,* 373 F.Supp. at 351; *Waylyn Corp. v. United States,* 231 F.2d 544, 547 (1st Cir.), *cert. denied,* 352 U.S. 827, 77 S.Ct. 40, 1 L.Ed.2d 49 (1956). Sovereign immunity extends to counterclaims and cross-claims. *Shaw,* 309 U.S. at 502–03, 60 S.Ct. at 662. Where the United States has not waived immunity, the court lacks subject matter jurisdiction over the action. *Coggeshall Dev. Corp. v. Diamond,* 884 F.2d 1, 3 (1st Cir.1989); *Gregory Park,* 373 F.Supp. at 351–52. A waiver of sovereign immunity must be unequivocally expressed. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976).

■■ The National Housing Act, 12 U.S.C. § 1702, is a partial waiver of sovereign immunity which permits suits against the Secretary in his official capacity. A judgment is limited to funds held by HUD and may not be satisfied by funds or property of the United States. *Federal Housing Admin. v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). This waiver of sovereign immunity does not permit counterclaims for alternative relief in a foreclosure action. *Gregory Park,* 373 F.Supp. at 351. A defendant may assert a counterclaim for recoupment to reduce or defeat

the government's recovery based upon a "sufficient identity of transaction", but affirmative recovery against the United States requires an independent waiver of immunity. *Id.* (citations omitted).

■ The National Housing Act, 12 U.S.C. § 1702, does not constitute a waiver of sovereign immunity for tort claims for damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671. *Waylyn*, 231 F.2d at 544; *Donohue v. United States*, 437 F.Supp. 836, 842 (E.D.Mich.1977). A claim for damages in tort must proceed under the FTCA.

A limited waiver of sovereign immunity exists for breach of contract actions in the Tucker Act, 28 U.S.C. § 1346(a), for damage claims under $10,000. The United States Claims Court has exclusive jurisdiction over claims in excess of $10,000. Thus, this court lacks jurisdiction over Berk's claims to the extent that they are based on breach of contract. However, as discussed *infra,* the court construes Berk's claim as arising in tort.

*Count one.* In the first count of its counterclaim, Berk requests that the court reform the mortgage and turn over funds in an escrow account, based upon mutual mistake. In particular, Berk asserts that DRG (the original lender) provided worksheets, estimates, repair schedules, cash flow analysis, and projections which demonstrated the feasibility of the project. Berk states that it relied upon DRG's documentation to invest in the project. Berk alleges that the projections and estimates of costs were incorrect, and it was forced to invest millions of dollars above the mortgage commitment to "acquire title" to the project. Berk alleges that DRG recommended that Berk obtain a "refunder", which in effect, would correct the errors in the projections which induced Berk to accept the DRG financing.

Berk also alleges that York, as HUD's agent, deliberately destroyed its ability to obtain a refunder, repudiated HUD's obligations to Berk and refused to consummate certain agreed-upon sales of land. Berk asserts that as a result of the "mutual mistakes" which induced Berk to execute the mortgage documents, it has been irreparably damaged. As noted *supra,* Berk requests reformation of the mortgage, a turnover of all funds held by HUD, and attorney fees and costs of the suit.

■ Reformation is appropriate where a valid contract exists between the parties but for some reason the instrument that memorializes the agreement does not reflect the agreement of the parties. *Erie Telecommunications, Inc. v. Erie,* 853 F.2d 1084, 1091 (3d Cir.1988), *citing H. Prang Trucking Co., Inc. v. Local Union No. 469,* 613 F.2d 1235, 1239 (3d Cir.1980) (New Jersey law). In this case, although Berk attempts to characterize the situation as a mutual mistake, the facts alleged in Berk's counterclaim indicate that Berk's claim arises from projections provided by DRG which were proven incorrect after closing. Reformation of a contract is granted to correct a mutual mistake. *Lord v. Municipal Utilities Authority of Tp. of Lower Cape May,* 133 N.J.Super. 503, 507, 337 A.2d 621 (App.Div.1975). Berk points to no facts to support its claim that the mortgage was the result of a mutual mistake. Berk merely alleges that it relied to its detriment on DRG's projections, which turned out to be erroneous. These facts support a claim for the tort of misrepresentation, not mutual mistake.

■ Waiver of immunity for tort claims is evaluated under the Federal Tort Claims Act §§ 1346(b), 2671–2680. These provisions govern tort claims against federal agencies notwithstanding authority which permits those agencies to sue and be sued. 28 U.S.C. § 2679; *Gregory Park,* 373 F.Supp. at 352; *Edelman v. Federal Housing Admin.,* 382 F.2d 594 (2d Cir.1967); *Northridge Bank v. Community Eye Care Center Inc.,* 655 F.2d 832, 835 (7th Cir.1981). In *Gregory Park,* the court found a sufficient identity of transaction based upon the mortgage agreements executed by the parties to permit recoupment of the defendant's lost profits. 373 F.Supp. at 351. However, the court noted that the request to enjoin the foreclosure and for an affirmative recovery of damages required a specific waiver of sover-

eign immunity. Waiver, if any, could not be found under the Tucker Act, but only under the FTCA, since the defendant's claim sought affirmative relief in tort based upon its claim that HUD caused the default by failing to require escrow amounts sufficient to meet the service charges. *Id.* at 352. The *Gregory* court found that the FTCA claims were barred, since they involved discretionary conduct which is exempt from the waiver of sovereign immunity under the FTCA. *Id.* at 352.

■ As noted *supra*, the first count of Berk's counterclaim against HUD alleges the tort of misrepresentation. Assuming without deciding that HUD has a duty to Berk based upon the conduct of HUD's servicer, this claim is nonetheless barred. A tort claim based upon misrepresentation, deceit or interference with contract rights is excluded from the waiver of sovereign immunity under the FTCA. 28 U.S.C. § 2680(h); *Gregory Park*, 373 F.Supp. at 352; *Ortiz v. United States*, 661 F.2d 826, 829 n. 3 (10th Cir.1981); *United States v. Chelsea Towers, Inc.*, 295 F.Supp. 1242, 1247 (D.N.J.1967). Therefore, the first count of Berk's counterclaim is barred and will be dismissed.

■ *Count 2.* In the second count of the counterclaim against HUD, Berk asserts that it will be permanently injured unless the court enjoins HUD from proceeding with the foreclosure action. As noted *supra*, a similar argument was rejected in *Gregory Park*, absent a specific waiver permitting such affirmative relief. 373 F.Supp. at 351. As in *Gregory Park*, where the defendant's counterclaims are based on the tort of negligence or misrepresentation, the court has no jurisdiction to grant such affirmative relief. 373 F.Supp. at 352. The court has jurisdiction over the claim only to the extent that Berk seeks recoupment of money held by HUD. Therefore, the second count of Berk's counterclaim must be dismissed.

*Count 3.* In the third count of the counterclaim, Berk requests equitable recoupment, an order enjoining HUD from proceeding with the foreclosure action, and an order rescinding the notice of default and acceleration of the mortgage. Count three is not a proper assertion of a counterclaim, but only sets forth the desired relief. As noted *supra*, affirmative relief against the United States is limited to possible equitable recoupment, absent a specific waiver of sovereign immunity. *Gregory Park*, 373 F.Supp. at 351. Therefore, count three of the counterclaim will be dismissed except for the recoupment claim.

■ *Count 4.* In count four of the counterclaim, Berk alleges that HUD rejected its proposals for a workout of the mortgage, "nullified" its ability to restructure the project by unilaterally paying off bonds and destroying the project's tax-exempt status, and refused to assume responsibility for the current financial status of the project attributable to York's refusal to release the escrow funds to Berk. Finally, Berk asserts that HUD and York committed waste by refusing to release funds to rebuild units damaged by a fire and by refusing to consider a workout proposal. In summary, Berk alleges that HUD's conduct impaired its ability to operate the project and restructure the loan. Berk requests the following relief: general, compensatory and punitive damages, an order directing HUD to enter into a workout agreement with Berk, and an order enjoining HUD from proceeding with the foreclosure action.

Berk's claims are based on HUD's allegedly improper conduct in relation to the mortgage. This claim arises in tort and the FTCA operates as a limited waiver of sovereign immunity with respect to some tort claims. However, § 2680(a) of the FTCA provides that the Act does not apply to:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Berk argues that HUD is responsible for refusing to accept its workout proposal. HUD has no obligation to accept or even consider a workout proposal, and thus this claim involves a discretionary function under § 2680(a) of the FTCA. *Beacon Terrace*, 594 F.Supp. at 58; *Victory Highway Village, Inc.*, 662 F.2d at 497; *American National Bank & Trust*, 595 F.Supp. 324 (court rejected defense that HUD failed to pursue workout or other alternatives to foreclosure); *United States v. 1300 Lafayette East*, 455 F.Supp. 988, 992 (E.D.Mich. 1978).

HUD's decision not to release the fire insurance proceeds or to apply the escrow funds is likewise a discretionary function exempt from the waiver of sovereign immunity. *Queens Court Apartments*, 296 F.2d at 538 (government did not have duty to release funds held in reserve to cover deficiencies, and could hold funds as set-off against amounts due from foreclosure sale.)

■ Even if the discretionary conduct asserted in Berk's counterclaims were not exempt from the waiver of sovereign immunity in the FTCA, the court could not order HUD to enter into a workout proposal, since mandamus cannot be invoked to compel performance of a discretionary duty. *Ortiz*, 661 F.2d at 831. Nor does the court have the power to order specific performance by the United States of its contractual obligations. *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689, 102 S.Ct. 3304, 3317, 73 L.Ed.2d 1057 (1982).

■ In the alternative, Berk claims that HUD's refusal to approve a workout agreement and to release the fire insurance proceeds and the escrow funds may be construed as HUD's interference with Berk's contractual rights under the mortgage. These claims are barred by § 2680(h) of the FTCA, which exempts claims of interference with contractual rights from the limited waiver of sovereign immunity under the Act. This exemption includes interference with prospective advantage. *Art Metal–USA, Inc. v. United States*, 753 F.2d 1151, 1154–55 (D.C.Cir.

1985). Thus, Berk's claims based upon HUD's interference with its rights to restructure the mortgage and obtain the funds to operate the project are barred by § 2680(h).

### 2. *Exhaustion*

■ Tort claims against the United States must be presented to the appropriate federal agency pursuant to § 2675(a) of the FTCA, notwithstanding the "sue and be sued" language of the National Housing Act, 12 U.S.C. § 1702. *Northridge Bank*, 655 F.2d at 835 (exhaustion required under Federal Tort Claims Act despite waiver of sovereign immunity against the Small Business Administration). Berk has failed to present its claims to HUD for adjudication as required by § 2675. This section is a jurisdictional prerequisite to bringing a claim against the government. *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

### 3. *Punitive Damages*

Punitive damages are not available under the FTCA. 28 U.S.C. § 2674.

For the aforementioned reasons, the court will dismiss Berk's counterclaim except for its claim of equitable recoupment.

### B. JURY DEMAND

■ HUD moves to strike Berk's jury demand. Berk argues that pursuant to *Fed.R.Civ.P.* 39(a), the court has discretion to order some of the issues in the case tried to a jury. Berk bases this argument on its claims for damages.

Mortgage foreclosure issues are equitable in nature and do not afford the right to a jury trial. *Rozelle v. Connecticut General Life Ins. Co.*, 471 F.2d 29 (10th Cir.1972), *cert. denied*, 411 U.S. 921, 93 S.Ct. 1549, 36 L.Ed.2d 314 (1973); *Gefen v. United States*, 400 F.2d 476, 478 (5th Cir.1968), *cert. denied*, 393 U.S. 1119, 89 S.Ct. 990, 22 L.Ed.2d 123 (1969); *Vieser v. Harvey Estes Constr. Co.*, 69 F.R.D. 370, 375 (W.D.Okla.1975).

Berk's only counterclaim not barred by sovereign immunity is its equitable recoupment claim, on which Berk is not entitled to a jury trial. The court will grant HUD's motion to strike Berk's jury demand.

### III. MOTION BY THIRD–PARTY DEFENDANT YORK TO DISMISS THE THIRD–PARTY COMPLAINT

York moves to dismiss Berk's third-party complaint on the following grounds: Berk fails to allege that York is liable for the Government's claims against Berk; York is entitled to sovereign immunity as an agent of the Government; Counts I and III fail to state a claim against York; and Counts IV and V fail to state a claim for interference with Berk's economic interests since York is not a third party with respect to the loan.

### A. SOVEREIGN IMMUNITY

■■■■ York argues that it is entitled to sovereign immunity for its actions as HUD's agent. *Yearsley v. W.A. Ross Constr. Co.,* 309 U.S. 18, 21–22, 60 S.Ct. 413, 415, 84 L.Ed. 554 (1940); *Myers v. United States,* 323 F.2d 580, 583 (9th Cir. 1963); *Central Claims Service, Inc. v. Computer Science Corp.,* 706 F.Supp. 463, 466 (E.D.La.1989). An agent working under the direction of a federal agency and within the parameters of its official duties is entitled to immunity. *Yearsley,* 309 U.S. at 21, 60 S.Ct. at 415. However, an agent may be sued in his individual capacity where he has exceeded the scope of his authority. *Id.; Central Claims Services,* 706 F.Supp. at 466. The court cannot determine from the record whether York acts under the direction and/or supervision of HUD in servicing its mortgages. However, assuming *arguendo* that York acts as an agent of HUD, the court concludes that a liberal reading of the third-party complaint shows that Berk alleges that York's conduct was outside of the scope of its authority. Therefore, at this stage of the proceedings the court cannot conclude that York is entitled to sovereign immunity against Berk's third-party complaint. *Coggeshall,* 884 F.2d at 3.

### B. RULE 14(a)

In the alternative, York argues that Berk's third-party complaint is improper, since it fails to allege that York is liable to Berk for the United States' claims against Berk. *Fed.R.Civ.P.* 14(a) provides:

> [A] defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

■■■■ A third-party claim is not proper where it is separate and independent from the claim alleged in the complaint, even where it arises out of the same facts as the plaintiff's action. *United States v. Munroe Towers, Inc.,* 286 F.Supp. 92 (D.N.J.1968); Wright, Miller and Kane, *Federal Practice and Procedure,* 6 § 1446 at 355–63. A district court, in its discretion, may dismiss third-party claims which do not satisfy Rule 14(a). *Livera v. First Nat'l State Bank,* 879 F.2d 1186 (3d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 332, 107 L.Ed.2d 322 (1989).

■■■■ York claims that it cannot be held derivatively or secondarily liable to Berk to satisfy the United States' judgment against Berk, and thus Berk's third-party claim is not proper under Rule 14(a). York relies on *Munroe Towers,* which was a foreclosure action by the United States. In *Munroe Towers,* numerous contractors were named by the government as defendants. One of the contractors sought leave to file a third-party complaint against the lender for alleged misconduct concerning funds withheld by the lender. The court noted that a third-party complaint "may be maintained only in cases in which the third-party defendant would be liable secondarily to the original defendant in the event the latter is held liable to the plaintiff." *Id.* at 96. The court concluded that the claim that the lender wrongfully withheld funds was separate and independent from the government's foreclosure action, and denied leave to file a third-party complaint against the lender. *Id. See also United States v. Olavarrieta,* 812 F.2d 640 (11th

Cir.), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987) (government's action to recover on student loan default is separate and independent from defendant's third-party claim against school for breach of contract for failure to award degree).

Berk has not alleged that York is, or could be, liable to Berk for the United States' judgment on its foreclosure claim. Therefore, Berk's claims against York are not proper third-party claims under Rule 14(a), and the court will dismiss Berk's third-party complaint against York.

Since the court has determined that Berk's claims against York will be dismissed, the court does not reach the issue raised by York of whether a claim of tortious interference with contract or economic relations can be brought against one who is a party to the contract.

Accordingly,

IT IS on this 1st day of May, 1991 ORDERED that HUD's motion for the appointment of a receiver to manage Hunters Glen .Apartments during the pendency of the foreclosure proceeding is granted, and

IT IS FURTHER ORDERED that HUD's motion to dismiss Berk & Berk's counterclaims is granted except as to the equitable recoupment counterclaim, and

IT IS FURTHER ORDERED that HUD's motion to strike Berk & Berk's jury demand is granted, and

IT IS FURTHER ORDERED that third-party defendant York's motion to dismiss the third-party complaint in its entirety is granted.